ALLSTATE INSURANCE COMPANY, Respondent, v. TRUCK INSURANCE EXCHANGE, Appellant.

*No. 333. Argued March 5, 1974.—Decided April 2, 1974.*
(Also reported in 216 N. W. 2d 205.)

150

152

For the appellant there were briefs by *Arnold, Murray & O'Neill,* attorneys, and *Donald P. O'Meara* of counsel, all of Milwaukee, and oral argument by *Mr. O'Meara.*

For the respondent there was a brief by *Kivett & Kasdorf,* attorneys, and *John M. Swietlik* of counsel, all of Milwaukee, and oral argument by *Mr. Swietlik.*

CONNOR T. HANSEN, J. The basic dispute in this litigation concerns which of the two insurance policies covers this accident.

The general liability policy of Allstate excluded coverage for loss arising out of ". . . the ownership, maintenance, operation, use, loading or unloading . . ." of any automobile away from the residence of the insured.

The comprehensive liability policy of Truck provided coverage for bodily injury to any person ". . . arising out of the ownership, maintenance or use of any automobile, . . ."

The accident occurred September 25, 1964. Jaskowiak, the deceased owner of the vehicle and Truck's insured, was driving the panel truck which had only a driver's seat. Macsurak, Allstate's insured, was kneeling on the floor to the right of Jaskowiak. Apparently both men had their uncased, loaded rifles on the floor between them. An elk was sighted and Jaskowiak stopped the truck. Macsurak was in the process of removing his rifle from the truck when it accidentally discharged and killed Jaskowiak just as he was getting out of the truck.

In September, 1965, Mary T. Jaskowiak, widow of the deceased and executrix of his estate, commenced a wrongful death action against Macsurak. Allstate undertook the defense of the action.

Allstate settled the case with the widow and executrix and on July 8, 1966, commenced this action for indemnification. Allstate alleges that its policy did not provide coverage although it paid $18,000 to settle the case of the widow and executrix against its insured, and that Truck's policy of insurance afforded Macsurak coverage as an omnibus insured under Truck's policy issued to Jaskowiak.

*Issues.*

We are of the opinion the following issues are dispositive of this appeal:

1. Whether Allstate's general liability policy afforded coverage to Macsurak for this accident?

2. Whether the Truck Insurance Exchange automobile liability policy issued to Jaskowiak afforded coverage to Macsurak for this accident?

3. Whether recovery by Allstate is barred by laches?

4. Whether the sum paid by Allstate in settlement of the action of the widow and executrix against its insured, Macsurak, constituted liquidated damages such that interest should accrue on that judgment as of the date of the commencement of this action?

1. The trial court found that Allstate was not a "volunteer" and no issue is raised on appeal as to this determination. The question is whether this particular accident which occurred while Macsurak was removing the rifle from the vehicle is excluded from the coverage of the Allstate policy. Truck argues that the exclusion of the policy relating to "use, loading and unloading" away from the residence of the insured does not apply. The reason being that ". . . [t]he substantial factor causing the death of Mr. Jaskowiak was the defectively maintained gun and this did not involve the use, loading and unloading of a vehicle. . . ." There is evidence from which it could reasonably be inferred that Macsurak had knowledge that his rifle was defective before the accident. Thus, argues Truck, Macsurak was negligent in bringing the rifle along in the first instance and this was the negligent act that caused the death of Jaskowiak. This analysis of Macsurak's negligence is partially correct. Also knowingly leaving a loaded rifle in the vehicle under the facts of this case could constitute negligence.

However, these alleged acts of negligence of Macsurak do not go to the issue. What is important is the fact that Macsurak was negligent in the manner in which he was attempting to remove the rifle from the vehicle. The argument of Truck that there was no evidence that

Macsurak pointed the gun at Jaskowiak ignores the fact that he was shot in the chest. Even though the rifle could have discharged when Macsurak was removing it from the vehicle, Jaskowiak would not have been hit in the chest if Macsurak had been properly removing the weapon.

Also, when Allstate commenced this action, its complaint in part alleged: ". . . Macsurak negligently and carelessly fired a rifle he was then and there lifting out of the truck into the chest of Vincent V. Jaskowiak, causing his death." The answer of Truck admits that Macsurak negligently and carelessly fired a rifle inflicting the injuries on Jaskowiak causing his death.

In considering a similar use of loading or unloading a vehicle, the court in *Amery Motor Co. v. Corey* (1970), 46 Wis. 2d 291, 297–299, 174 N. W. 2d 540, stated:

". . . In an automobile liability policy, as distinguished from a property liability policy, the purpose is coverage of causal negligence in the 'use' of the automobile. Persons actively engaged in loading and unloading the automobile in the commonly accepted meaning of those words are considered to be using or operating the automobile and are covered by the loading and unloading provision of the policy. . . .
". . .
"We think it is important for coverage that the negligence occur not only during the loading and unloading operation but that it be a part of that operation. . . .
". . .
"Neither concept of loading or unloading in respect to coverage is concerned with causation but rather with the nature of the acts. Causation has to do with liability of the person covered. Naturally, negligence causing injury must occur while the truck is being loaded or unloaded under either view and the negligent act must be a part of the activity of loading or unloading which constitutes a use of the truck for insurance purposes. *See* Annot. (1946), 160 A. L. R. 1259. One engaged in

loading or unloading a truck could be injured by a cause unconnected with the acts of loading and unloading and his cause of action could not be based upon the 'use' of the truck. It is likewise true negligent acts of loading or unloading need not result in an injury occurring during such loading or unloading. Normally, an injury is caused at the time of the occurrence of negligence; . . ."

In *Keller v. Schuster* (1972), 54 Wis. 2d 738, 743, 196 N. W. 2d 640, the court recognized that, ". . . so-called loading operations have been given a rather broad definition in this state. . . ." This court must seek to give effect to the true intention of the parties when it construes the Allstate Homeowners policy. *Schmidt v. Luchterhand* (1974), 62 Wis. 2d 125, 132, 214 N. W. 2d 393. While most loading and unloading cases in Wisconsin are construing those terms as they are found in automobile policies, nonetheless, those cases are persuasive in defining the general meaning of those terms. In this case Macsurak was unloading a loaded rifle. Macsurak was careless and negligent in the manner in which he removed this rifle from the van and such action constituted the unloading of the vehicle within the exclusion of the Allstate policy.

There are cases from other jurisdictions which are persuasive authority for concluding that Jaskowiak was killed while Macsurak was unloading the vehicle.[1] The exclusionary provisions as to loading and unloading in Allstate's general liability contract became effective when the act giving rise to the accident arises out of, and is incident to, the unloading. These men were on a hunting trip. The transportation of firearms on such an occasion is a customary and usual procedure. The removal of the

---

[1] See: *Unigard Mut. Ins. Co. v. State Farm Mut. Automobile Ins. Co.* (10th Cir. 1972), 466 Fed. 2d 865; *Laviana v. Shelby Mut. Ins. Co.* (D. C. Vt. 1963), 224 Fed. Supp. 563; *Allstate Ins. Co. v. Valdez* (D. C. Mich. 1961), 190 Fed. Supp. 893.

firearms from the vehicle so that they may be used for hunting constitutes unloading and such act falls within the exclusion of the Allstate policy. The loaded rifle was pointed at Jaskowiak when it was being unloaded from the vehicle and his death was caused by this negligent act.

2. The Truck automobile insurance policy (issued to Jaskowiak) affords coverage under the omnibus insured provision for liability because of bodily injury to any person arising out of the ownership, maintenance or "use" of this vehicle.

It is Truck's position that the undisputed facts in this case show that Macsurak was negligent in removing his rifle from the Chevrolet van and this constituted unloading of the vehicle and, therefore, did not come within the "use" provisions as contemplated by the issuance of its automobile liability policy.

In considering the exclusionary provision of the Allstate policy, we determined that Macsurak was negligent in unloading his rifle from the vehicle. Hence Allstate did not provide coverage because the policy did not cover the unloading of an automobile away from the residence of the insured.

Under the terms of the Truck policy, we must decide whether the "use" of this vehicle included this particular unloading operation although the policy did not specifically include or exclude unloading operations. In *Ermis v. Federal Windows Mfg. Co.* (1959), 7 Wis. 2d 549, 97 N. W. 2d 485, this court considered the provisions of a policy which provided coverage arising out of the " '. . . use of any automobile, including the loading and unloading thereof.' " *Ermis, supra*, page 553, stated:

"The words 'including the loading and unloading thereof' are an extension of the use clause and cover operations or acts in which the movement of the truck itself does not

play a part. To make American liable there will have to be proof upon the trial that the plaintiff was injured during a loading operation."

If the Truck policy specifically contained a "loading and unloading" provision in the coverage section such terms would have to be considered an extension of the "use" clause. Such a rationale is necessary lest the "loading and unloading" be considered to mean nothing. However, that is not to say that by simply excluding the phrase "loading and unloading" from its coverage section, Truck has thereby eliminated any coverage for liability resulting as a consequence of unloading this van.

When construing the meaning of terms used in liability insurance policies, it is the court's duty to determine the intent of the parties and ". . . whatever ambiguity exists . . . must be resolved in favor of the insured." *McPhee v. American Motorists Ins. Co.* (1973), 57 Wis. 2d 669, 676, 205 N. W. 2d 152.

The insured vehicle was a 1963 Chevrolet van. The use of the van for this hunting trip was reasonable and could be expected. Apparently the van is adapted for just such a purpose. If it can reasonably be expected that this van would be used to go on such a hunting outing, the necessary incidentals for such a hunting trip will be transported in the van, *i.e.*, rifles, ammunition, equipment and supplies. Such is a reasonable "use" of this vehicle, and loading and unloading of such materials and equipment, which is a normal incident to such use, constitutes the "use" of the vehicle in spite of the absence of any specific "loading and unloading" clause from the policy.

In *American Oil Co. v. Hardware Mut. Casualty Co.* (1st Cir. 1969), 408 Fed. 2d 1365, 1368, it was recognized that:

". . . There is adequate precedent for the view that when the policy is silent on the point, loading and unloading is 'using' an insured motor vehicle. . . ."

*See also:* 7 Appleman, *Insurance Law and Practice,* sec. 4316 (Cum. Supp. p. 93) and cases cited therein; Annot. (1963), *Automobile liability insurance: what are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicle,* 89 A. L. R. 2d 150, 163, sec. 9.

In *Travelers Insurance Co. v. American Fidelity & Cas. Co.* (D. C. Minn. 1958), 164 Fed. Supp. 393, 399, the court was considering the provisions of a policy issued by American in Wisconsin which insured against loss from liability arising " 'by reason of the ownership, maintenance or "use" of the insured vehicle when used for "transportation of merchandise for compensation." . . .' " Injuries were sustained in the unloading of the vehicle. As does Truck in the instant case, American contended that the injury sustained in the unloading did not occur when the vehicle was being used within the meaning of the coverage extended by the insurer. Similar to Truck's policy, American's did not define "use" to include "loading" and "unloading." The court concluded that, ". . . it is a reasonable construction of the policy that the parties intended the term 'use' to include loading and unloading, since these activities are essential to the use of the vehicle for the transportation of freight. . . ." *Travelers, supra,* page 400. We find this reasoning to be persuasive.

Also, in *Truck Insurance Exchange v. Webb* (1967), 63 Cal. Rptr. 791, 794, the court held:

" 'Use' thus includes 'loading and unloading,' even though, as in the policy involved in the present case, there is no specific provision covering such activities. (Citations omitted.)"

The insured van in this case, although it has not been described in detail, could reasonably be used for transporting equipment, materials, etc., just as any typical van is used for such purposes. It was conceded by coun-

sel for Truck that the vehicle could naturally also be expected to be used for hunting trips such as the one in this case. Thus, it must be expected that necessary hunting gear will be loaded into and unloaded from the van, and such unloading activity is within the contemplated "use" of the van.

It is generally recognized as follows:

"In determining whether the negligent act that caused a bodily injury arose out of the 'use' of a motor vehicle within the coverage of a motor vehicle liability policy, the court must consider whether it was a natural and reasonable incident or consequence of the use of the vehicle for the purposes shown by the declarations, though not foreseen or expected. Thus, it has been held that one who entered an automobile in order to move it a short distance so as to enable him to park his own automobile was 'using' such car when, because of defective brakes, the car rolled into a third car and caused injuries thereto. However, it has been held that an injury need not be the direct and proximate result, in a strict legal sense, of the use of an automobile to come within the coverage of a policy indemnifying against liability for damages caused by accident and arising out of the ownership, maintenance, or use of the automobile. This principle has been applied in cases where the injuries for which recovery was sought did not result from the movement of the vehicle." 7 Am. Jur. 2d, *Automobile Insurance,* p. 387, sec. 82.

In this case Macsurak was removing or unloading his rifle from the van when the rifle discharged. Even assuming that the rifle discharged because of a defective safety, the fact is that Macsurak was negligent in the manner in which he removed the rifle. If the rifle had been removed in a proper manner, it could have accidentally discharged and harmed no one. Thus, it was Macsurak's negligent act in removing the rifle that was a substantial cause of Jaskowiak's death.

Truck also argues that it is not liable because coverage under its policy would be "excess coverage" because the Allstate policy afforded coverage. However, as we have previously determined, coverage for this accident was expressly excluded from the Allstate policy.

3. Paragraph 56 of Truck's insurance contract provides as follows:

"In the event of accident, occurrence, or loss, written notice containing particulars shall be given by or for the insured to the Exchange or any of its authorized agents as soon as practicable; and, in case of theft, the insured shall also promptly notify the police. If claim is made or suit is brought against the insured, he shall immediately forward to the Exchange every demand, notice, summons or other process received by him or his representative."

Although paragraph 56 provides for written notice, the last page of the policy directs the insured to notify the company of an accident by telephone or telegraph. The reading of these provisions together makes it clear that any reasonable notice given to the insurer is sufficient to satisfy the requirements of the policy. *Boschek v. Great Lakes Mut. Ins. Co.* (1963), 19 Wis. 2d 514, 519, 520, 120 N. W. 2d 703.

The accident occurred on September 25, 1964. Approximately one month after the accident, the widow of the deceased spoke with Lawrence Logan, an agent for Truck Insurance Exchange, and asked him whether the Truck policy covered her husband's death. The agent told her there was no coverage. However, Logan testified that he did not refer the matter to the claim department. The agent also read of the accident in the newspaper a few days after its occurrence.

Approximately one year after the accident, in September of 1965, Mary T. Jaskowiak commenced the action against Macsurak, seeking damages for wrongful death. On March 3, 1966, that action was settled for $18,000.

On or about April 1, 1966, counsel for Allstate contacted Truck Insurance Exchanges branch claims manager, Robert W. Harley, and sought contribution for the $18,000 settlement. Harley received from Allstate the complete file on the Jaskowiak action and Harley testified that, aside from the question of the proper functioning of the safety on the rifle, he felt the file was complete from an investigatorial standpoint. Allstate's request was denied and this action for indemnification was commenced on July 8, 1966.

"What is 'as soon as practicable' is a question of fact which depends on the circumstances of the particular case. . . ." *Porter v. General Casualty Co.* (1969), 42 Wis. 2d 740, 743, 168 N. W. 2d 101.

In *Allen v. Ross* (1968), 38 Wis. 2d 209, 216, 156 N. W. 2d 434, the court held: ". . . We think that normally mere lapse of time cannot constitute a breach. . . ."

The trial court found that Allstate was not guilty of undue delay because there was no right on the part of Allstate to be indemnified until after the settlement was made. Truck could not expect to hear formally from Allstate until such time as a claim for indemnification was timely.

Macsurak did not have any reason to believe he was expected to give notice to Truck. A similar problem was raised in *Porter v. General Casualty Co., supra,* page 744, wherein the court held that "A preliminary question is whether the insured had reasonable grounds to believe he was a participant in an accident." In *Porter* the court cited *Vande Leest v. Basten* (1942), 241 Wis. 509, 513, 6 N. W. 2d 667, where the court held that " 'It is not the duty of the insured to make a report unless he has reasonable grounds to believe that he is a participant in an accident. . . .' " There is nothing in this record to indicate that Macsurak had reason to believe that he was insured by Jaskowiak's policy.

The trial court also held that, if notice was not timely given, Allstate overcame the presumption of prejudice. Sec. 204.34 (3), Stats., *Allen v. Ross, supra,* pages 213, 214. Allstate conducted its own investigation and the claims manager of Truck testified that it was complete except as to possible liability of the gunsmith who examined Macsurak's rifle before the hunting trip. However, the question before the court was coverage under the Truck policy and not the liability of the gunsmith. The facts were never disputed, thus, Truck was not prejudiced.

The trial court's findings are not against the great weight and clear preponderance of the evidence. *Resseguie v. American Mut. Liability Ins. Co.* (1971), 51 Wis. 2d 92, 100, 101, 186 N. W. 2d 236.

4. Allstate cross-appeals from the denial of its demand for interest, from the date of the commencement of this litigation on the $18,000 it paid in settlement of the suit against its insured. This demand for interest is predicated upon the fact that Truck admitted the settlement was reasonable. This admission does not mean Truck admitted they owed all or any part of the sum. Under the facts of this case, such an admission of reasonableness can only mean that the opposing party is not put to its proof on the question of reasonableness of the amount and in no way can it be construed as an admission or acknowledgment of either total or partial liability.

In this case the trial court allowed interest from October 26, 1972, the date of its decision. It was on that date that a judicial determination was made as to the reasonableness of the damages as to the parties to this litigation. The fact that another branch of the circuit court earlier determined the reasonableness of the amount in the action brought by the widow and executrix of decedent's estate against Macsurak, Allstate's insured,

is of no consequence. Truck was not a party to the action against Allstate.

*Zeidler v. Goelzer* (1926), 191 Wis. 378, 211 N. W. 140, and *Fehrman v. Smirl* (1964), 25 Wis. 2d 645, 131 N. W. 2d 314, are not in point. *Zeidler* and *Fehrman* were actions for damages for personal injuries. After verdict and judgment, appeal was taken. This court ordered a new trial on the issue of liability and allowed interest from the date of the verdict. Sec. 271.04 (4), Stats. (formerly sec. 271.05). In *Zeidler* and *Fehrman* the damages became liquidated when the verdict was accepted.[2] Damages in a tort action are generally not deemed liquidated so long as there is a dispute as to the amount due. They become liquidated when the verdict has been approved or when the amount has been determined by judicial decision. *First Wisconsin Trust Co. v. Schmidt* (1921), 173 Wis. 477, 180 N. W. 832; *Necedah Mfg. Corp. v. Juneau County* (1932), 206 Wis. 316, 237 N. W. 277; *Wendt v. Fintch* (1940), 235 Wis. 220, 292 N. W. 890. The trial court made the correct determination on the issue of interest due Allstate.

*By the Court.*—Judgment affirmed, and costs awarded to the respondent.

---

[2] *See: Smith v. Atco Co.* (1959), 6 Wis. 2d 371, 94 N. W. 2d 697.