LAWVER, Plaintiff-Respondent, v. BOLING and another, Defendants-Respondents: CUMIS INSURANCE SOCIETY, INC., Defendant-Appellant.

*No. 548 (1974). Submitted on briefs January 7, 1976.—*
*Decided February 19, 1976.*
(Also reported in 238 N. W. 2d 514.)

410

For the appellant there was a brief by *L. E. Sheehan* and *Moen, Sheehan & Meyer, Ltd.* of La Crosse.

For the plaintiff-respondent James H. Lawver there was a brief by *Frederic J. Berns,* and *Tarrant, Mattka & Robertson,* all of Whitehall.

For the defendant-respondent Clarence E. Boling there was a brief by *LaVerne Michalak,* and *Kulig, Luethi & Michalak,* all of Independence.

For the defendant-respondent Homestead Mutual Insurance Co. there was a brief by *Ruth J. Weber,* and *Byrne, Bubolz & Spangel,* all of Appleton.

BEILFUSS, J. The broad issues on this appeal are whether the trial court abused its discretion in denying summary judgment to Cumis and granting summary judgment to Homestead. The underlying question, however, is whether either or both of the policies here involved provide coverage for this accident. The resolution of the coverage question requires a construction and application of particular provisions contained in those policies. In considering motions for summary judgment the court must examine the pleadings and affidavits to determine whether any question of fact exists or if conflicting inferences might be drawn from the undisputed facts which would require a trial on the issue of coverage.[1] Summary judgment is proper only where there is no material issue of fact and the question presented is solely one of law.[2] If there is a dispute as to the material facts, if different inferences might be drawn from the facts, or if the application of the con-

---

[1] *See: Peterson v. Truck Ins. Exchange* (1974), 65 Wis. 2d 542, 546, 223 N. W. 2d 579.

[2] *Breiby v. Department of Administration* (1972), 55 Wis. 2d 16, 197 N. W. 2d 737.

trolling law to the facts is uncertain, summary judgment should not be granted.[3]

Cumis' primary contention on appeal is that Lawver was Boling's employee at the time of the accident as a matter of law. As it is used in the exclusion in Cumis' policy, the term "employee" is to be given its ordinary and commonly accepted meaning.[4] In determining the commonly understood meaning, it is appropriate to look to definitions in a recognized dictionary.[5] Webster's Third International Dictionary defines an employee as "one employed by another usually in a position below the executive level and usually for wages." From a review of the record we conclude that the trial court was correct in concluding that the question of whether Lawver was Boling's employee at the time of the accident was one of fact to be determined at trial.

The record shows that there had been no prior discussion about the job, that Lawver and his family were on a surprise visit to Boling's farm, and that Boling requested Lawver's help on the afternoon of his arrival. Boling provided the materials for the chair, the two men decided on the type of rig to be constructed, and both men assembled it. No discussion of any wages to be paid took place until after Lawver's release from the hospital following the accident. Conflicting inferences could be drawn from these facts as to whether the parties originally contemplated that Lawver would be compensated for his assistance. It is for the trier of fact to

[3] *See: Ramsden v. Hawkinson Gas Service Co.* (1974), 63 Wis. 2d 455, 459, 217 N. W. 2d 322.

[4] *Mittelsteadt v. Bovee* (1960), 9 Wis. 2d 44, 50, 100 N. W. 2d 376; *Solberg v. Metropolitan Life Ins. Co.* (1971), 50 Wis. 2d 746, 185 N. W. 2d 319.

[5] *Garriguenc v. Love* (1975), 67 Wis. 2d 130, 135, 226 N. W. 2d 414.

draw the proper inference and not for the court, upon affidavits, to determine which of two permissible inferences should prevail.[6]

Cumis also contends that Lawver's injuries did not arise out of the use of Boling's truck. It argues that the injuries are more properly attributable to negligence in the selection of materials for and manner of assembling the rigging. As used in a liability insurance policy, the words "arising out of" are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk for which coverage is provided.[7]

The Cumis policy provides coverage for injuries arising out of the use of an automobile. There is no dispute that Boling's truck was an integral part of the apparatus employed in repairing the barn. It was in operation at the time of the accident and, had it not been, the accident would not have happened. There can be no doubt that, for the purpose of the coverage clause in Cumis' policy, the accident arose out of the use of the truck. The causal connection required to be established between the use of the automobile and the injuries is not of the type which would ordinarily be necessary to warrant a finding of "proximate cause" or "substantial factor" as those terms are used in imposing liability for negligent conduct.[8]

As it is used in the coverage clause of an automobile liability policy, the phrase "arising out of" is not so

[6] See: Voysey v. Labisky (1960), 10 Wis. 2d 274, 278, 103 N. W. 2d 9.

[7] See: Garriguenc v. Love, supra, footnote 5.

[8] See: Westchester Fire Ins. Co. v. Continental Ins. Co. (1973), 126 N. J. Super. 29, 312 Atl. 2d 664, affirmed (1974), 65 N. J. 152, 319 Atl. 2d 732; Dairyland Ins. Co. v. Concrete Products Co.

much concerned with causation as it is with defining the risk for which coverage will be afforded. The issue is whether the vehicle's connection with the activities which gave rise to the injuries is sufficient to bring those general activities, and the negligence connected therewith, within the risk for which the parties to the contract reasonably contemplated there would be coverage. This question is usually resolved by determining whether the alleged "use" is one which is reasonably consistent with the inherent nature of the vehicle.[9] That the activities could possibly have been carried on, and the accident taken place, without the use of the vehicle is irrelevant.

Likewise, once the general activities which involve the vehicle can be said to constitute a covered "use" of that vehicle, it makes no difference, for coverage purposes, whether the negligent act for which liability attaches occurs in the actual operation of the vehicle or in some other aspect of that "use." In this case the insured vehicle is a pickup truck in the farm setting. It is reasonably to be expected that it will be put to a variety of uses beyond the ordinary transportation of persons and goods from place to place. Included within that range of reasonable uses is its use as a power source in performing necessary farm repairs. Whether Boling was negligent in the manner in which he moved the truck forward or in his selection of materials for and construction of the rigging, the injuries arose out of a use of the truck and are therefore covered under the Cumis policy.

Two arguments are made in support of the contention on the cross-appeals that the trial court abused its dis-

---

(Iowa, 1973), 203 N. W. 2d 558; *National Indemnity Co. v. Ewing* (1964), 235 Md. 145, 200 Atl. 2d 680; *Amery Motor Co. v. Corey* (1970), 46 Wis. 2d 291, 174 N. W. 2d 540.

[9] *See: Allstate Ins. Co. v. Truck Ins. Exchange* (1974), 63 Wis. 2d 148, 216 N. W. 2d 205.

cretion in granting summary judgment to Homestead. First, the cross-appellants assert that whether the truck was being "used" at the time of the accident within the meaning of the exclusion in the Homestead policy is a question of fact which must be resolved at trial. Secondly, it is argued that at the time of the accident the pickup truck was being used as a "farm implement" for "ordinary farm purposes" and that it was therefore not an "automobile" as defined by the policy.

The exclusionary clause in the Homestead policy provides that the coverage provided by the policy does not apply to the "ownership, maintenance, operation, use, loading or unloading of" an automobile. The cross-appellant contends that Boling's negligence was connected with his choice of materials for and manner of construction of the rigging and not with his actual operation of the truck. Liability for such negligence, it is argued, is within the coverage of Homestead's all-risk policy. The question raised by these arguments is whether a conclusion that the injuries arose out of the use of the truck for purposes of establishing coverage under Cumis' automobile liability policy is determinative of whether the truck was "used" so as to exclude coverage under Homestead's policy.[10] Prior decisions of this court tend to indicate that it is.

In *Luck v. Hardware Mut. Casualty Co.* (1954), 268 Wis. 223, 67 N. W. 2d 306, a pedestrian was killed when struck by a truck driven by a village employee. The vil-

[10] While the relevant language in the two policies is not identical, we conclude that, insofar as the respective provisions are used in an attempt to define the risk which is covered or excluded, they should be read to mean the same thing. That is, bodily injury arising from the use of an automobile is expressly covered in the Cumis policy and expressly sought to be excluded from the Homestead policy.

lage was insured under a general liability policy which excluded coverage for accidents caused by the operation, maintenance or use of a motor vehicle. The plaintiff's complaint alleged negligence both in the operation of the truck and in the manner in which the village had maintained its streets and signs. In affirming a summary judgment for the insurer, the court stated at page 227:

"The restrictive provision of the policy is plain and unambiguous. It declares that the policy will not apply to any accident caused by the operation of an automobile or truck. The restriction manifestly is applicable regardless of how the accident occurred or whose negligence, if any, contributed thereto. Here the factor governing the insurer's liability and its obligation to defend is the particular risk covered. While the village of Luck may have been liable under the circumstances for failure to provide signs or furnish a safe place for crossing or in failing to properly warn its employees in manner as alleged in the Tollefson complaint, nevertheless there is no escape from the fact as indicated by the complaint and agreed to upon the trial by the parties, that Mr. Tollefson was struck by a truck and that the claim did not fall within the insurance provided."

In *Allstate Ins. Co. v. Truck Ins. Exchange* (1974), 63 Wis. 2d 148, 216 N. W. 2d 205, the owner and driver of a panel truck was killed while on a hunting trip when a rifle which a passenger was in the process of removing from the truck accidentally discharged. At the time of the accident the passenger was insured under a policy of homeowner's insurance which excluded coverage for loss arising out of " '. . . the ownership, maintenance, operation, use, loading or unloading . . .' " of an automobile away from the residence of the insured. The passenger was also an omnibus insured under the automobile liability policy covering the truck which provided coverage for bodily injury " '. . . arising out of the ownership, maintenance or use of any automobile, . . .' "

The homeowner's insurer settled the case with the deceased driver's estate and sought indemnification from the auto liability insurer. The trial court entered judgment for the homeowner's insurer. On appeal the automobile insurer claimed that the exclusion in the homeowner's policy did not apply because the cause of the accident was the passenger's negligence in maintaining the gun in a defective condition. This court noted that there was evidence from which it could be inferred that the passenger had knowledge that the rifle was defective and that he was negligent in bringing the rifle along and in leaving a loaded weapon in the vehicle. The court also conceded that this negligence could have been a substantial factor in causing the driver's death, but stated at page 154:

"However, these alleged acts of negligence of Macsurak do not go to the issue. What is important is the fact that Macsurak was negligent in the manner in which he was attempting to remove the rifle from the vehicle."

The court concluded that the passenger's act in removing the rifle from the vehicle constituted an "unloading" of that vehicle, and continued at pages 156, 157:

"The exclusionary provisions as to loading and unloading in Allstate's general liability contract became effective when the act giving rise to the accident arises out of, and is incident to, the unloading. These men were on a hunting trip. The transportation of firearms on such an occasion is a customary and usual procedure. The removal of the firearms from the vehicle so that they may be used for hunting constitutes unloading and such act falls within the exclusion of the Allstate policy."

The court then held that the automobile liability policy provided coverage for the accident even though it did not expressly include the terms "loading" and "unloading" in its coverage clause. The passenger's conduct in re-

moving the rifle from the truck was held to constitute a "use" of the vehicle. The court concluded at page 160:

"Even assuming that the rifle discharged because of a defective safety, the fact is that Macsurak was negligent in the manner in which he removed the rifle. If the rifle had been removed in a proper manner, it could have accidently discharged and harmed no one. Thus, it was Macsurak's negligent act in removing the rifle that was a substantial cause of Jaskowiak's death."

On almost identical facts, the California Supreme Court has reached a different result. In *State Farm Mut. Automobile Ins. Co. v. Partridge* (1973), 10 Cal. 3d 94, 109 Cal. Rptr. 811, 514 Pac. 2d 123, a passenger in an automobile was injured when a gun which the driver was handling discharged. Evidence in the case indicated that the driver had modified the weapon so that it would have a "hair trigger action." The court concluded, initially, that the injury arose out of the use of the vehicle and was therefore covered under the driver's automobile liability policy. The driver was also insured under a homeowner's liability policy which excluded coverage for injuries arising out of the use of an automobile. The California court held that the fact that the injury arose out of the use of the automobile for the purpose of fixing coverage under the automobile liability policy was not necessarily determinative of whether the same injury fell within the similarly worded exclusion in the homeowner's policy.

In so holding the court first pointed out that while the language in the two policies was substantially similar, it was clear from past authorities that different rules of construction apply to exclusionary clauses as distinguished from coverage clauses. The court noted that whereas coverage clauses are interpreted broadly so as to afford the greatest protection to the insured, exclusionary clauses are interpreted narrowly against the

insurer. This difference in construction was held to be derived from the fundamental principle that all ambiguities in an insurance policy are construed against the insurer-draftsman.

The court went on to state, however, that while liability under the homeowner's policy could be predicated upon the ambiguous application of the exclusionary clause in the context of the case, a stronger basis for that conclusion existed.

"Here the 'use' of Partridge's car was not the sole cause of Vanida's injuries but was only one of two joint causes of the accident. Thus, even if we assume that the connection of the car with the accident is the type of non-ambiguous causal relationship which would normally bring the exclusionary clause into play, the crucial question presented is whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving). Defendants correctly contend that when two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy." *State Farm Mut. Automobile Ins. Co. v. Partridge, supra*, at page 102.

The holding in *Partridge* was subsequently followed, on similar facts, in *Glens Falls Ins. Co. v. Rich* (1975), 49 Cal. App. 3d 390, 122 Cal. Rptr. 696.

The result in the California cases was achieved through a strict construction of the exclusionary clause. This court has adhered to the principle that provisions in insurance contracts in the absence of an ambiguity are not to be construed strictly.[11] In *Garriguenc v. Love, supra,* the court recently rejected the contention that the phrase "arising out of," when used in a similar exclusionary

---

[11] *See: Limpert v. Smith* (1973), 56 Wis. 2d 632, 203 N. W. 2d 29; *Leatherman v. American Family Mut. Ins. Co.* (1971), 52 Wis. 2d 644, 190 N. W. 2d 904.

clause, was ambiguous because it was not clear whether the exclusion applies only to injury caused by the conduct of the driver or to injury caused by any condition, whether directly or indirectly related to the use of an automobile. Instead, the court gave a broad construction to the phrase, citing the *Partridge Case* as authority. Moreover, an otherwise unambiguous provision is not rendered ambiguous simply because it is difficult to apply to the facts of a particular case.[12]

The rule which precludes strict construction in the absence of an ambiguity is designed to avoid binding an insurer to a risk which it did not contemplate and for which it was not paid.[13] The California court in *Partridge* did not base its decision on the existence of an ambiguity. Instead, it found that a covered risk and an excluded risk concurred in causing the injury. It is apparent that the insurer, under such circumstances, is not being held to provide coverage for a risk which it did not contemplate and for which it received no premium. Indeed, it would appear to be unfair to the insured to deny benefits he has paid for.

Here it has not yet been determined whether Lawver's injuries resulted from negligence, if any, in the actual operation of the truck (an excluded risk) or from negligence in the choice of materials for and manner of construction of the rigging (a covered risk), or both. We conclude Homestead should not be excused from its obligation to defend the action or pay benefits until it has been determined that the injuries did not result, even in part, from a risk for which it provided coverage and collected a premium. That determination presents a question

[12] *Rabinovitz v. Travelers Ins. Co.* (1960), 11 Wis. 2d 545, 105 N. W. 2d 807.

[13] *See: D'Angelo v. Cornell Paperboard Products Co.* (1973), 59 Wis. 2d 46, 207 N. W. 2d 846; *Amidzich v. Charter Oak Fire Ins. Co.* (1969), 44 Wis. 2d 45, 170 N. W. 2d 813.

of fact which cannot be answered on a motion for summary judgment.

In summary, we believe that the rationale of the California cases should be applied to this case. This will require, of course, that the exclusionary clause in the Homestead policy be given a different, stricter construction than the similar coverage clause in the Cumis policy. The objective of this approach is to provide the broad coverage under both policies. The rule which ordinarily limits strict construction to instances of ambiguity should have no application where the danger it is designed to avoid is not present, namely, coverage for which the insurer has not received a premium. This disposition of the case renders it unnecessary to determine whether Boling's pickup truck was a "farm implement" and therefore not included within the provision of the Homestead policy which excludes coverage for the use of an automobile.

*By the Court.*—Order denying motion for summary judgment of Cumis Insurance Society, Inc., is affirmed; the judgment dismissing the complaint of the plaintiff upon motion for summary judgment of Homestead Mutual Insurance Company is reversed and remanded for trial. No costs to be taxed.