**FALCON STEEL COMPANY, INC.,**
Plaintiff,

v.

**MARYLAND CASUALTY COMPANY, a**
**Maryland Corporation, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted March 25, 1976.

Decided Sept. 14, 1976.

Steven J. Rothschild, and David B. Ripsom, of Prickett, Ward, Burt & Sanders, Wilmington, for plaintiff.

F. Alton Tybout of Tybout & Redfearn, Wilmington, for defendant.

TAYLOR, Judge.

During the period at issue in this law suit, plaintiff Falcon Steel Company, Inc. [Falcon], was covered by a comprehensive general liability policy issued by defendant, Maryland Casualty Company [Maryland]. During that period Falcon was a subcontractor engaged in the steel erection work at the Evans-Pitcairn Building, Philadelphia, Pennsylvania. On July 3, 1972, an employee of DIC Concrete Corporation, another subcontractor on the job, was killed in a fall from the structure. The widow of the deceased sued Turner Construction Company [Turner], the general contractor, and Falcon alleging various acts of negligence. Maryland has disclaimed liability under the policy on the ground that Falcon failed to comply with the notice provision of the policy. Falcon brought this action for declaratory judgment concerning the obligation of Maryland to provide defense and coverage to Falcon with respect to the suit brought by the widow of the deceased.

Maryland contends that Falcon failed to comply with the following provision of the policy:

"(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the company or any of its authorized agents as soon as practicable."

The factual setting pertinent to the notice is as follows: The death occurred July 3, 1972. Falcon's foreman on the job was aware of the death on the day it occurred, and knew that the person had fallen through a hole prepared by Falcon. Falcon's president learned of the death about a week after it occurred. He first learned on August 9, 1972 that it was contended that Falcon had some responsibility in connection with the death, when he received a letter from the workmen's compensation carrier for the deceased's employer. On August 15, 1972, the Falcon president responded to the August 9 letter by denying responsibility in connection with the accident and enclosing a statement by the job foreman setting forth pertinent facts. Contrary to its usual practice, Falcon did not send a copy of this correspondence to Maryland's agent. In May, 1973, the decedent's widow filed suit in Pennsylvania and the complaint was served on Falcon. Falcon immediately forwarded this to Maryland. On June 28, 1973, Maryland disclaimed liability to protect Falcon on the ground that Falcon had failed to comply with the notice provision of the insurance policy.

■ Two decisions of the Delaware Supreme Court in *State Farm Mutual Automobile Insurance Co. v. Johnson*, Del. Supr., 315 A.2d 585 (1973) and 320 A.2d 345 (Del.Supr.1974) hold that in determining whether a notice provision in an insurance policy which requires notice "as soon as practicable" has been satisfied, the Court must determine (1) whether notice was given within a reasonable time in view of the facts and circumstances of the particular case, and (2) whether prejudice has resulted to the insurer from the delay in notifying the insurer. Each of these factors must be considered independently and in the order mentioned. Ibid. The insurer escapes liability only if an inordinate lapse of time has caused prejudice to the insurer. Ibid.

I

The first test is whether notice was given within a reasonable time. The period of the delay may be considered in two segments. With respect to the period from the date of the accident until August 9, 1972, a period of one month and six days, during that period it does not appear that the president or other management personnel of Falcon were aware of the death or that an actual or potential claim against Falcon existed. Nor is it clear that Falcon's on-the-job foreman was aware of the implications of the death insofar as it might affect Falcon. It does not appear that the deceased was working with Falcon employees or was doing work which involved Falcon at the time of his death. Nor does it appear that a practice of requiring the reporting of accidents more remotely related to Falcon, such as this, existed between Falcon and Maryland. If the Court were called upon to adjudge this period separately, the result must be determined from different considerations than those involved in the subsequent period. However, since notice was not given on or about August 9, 1972, it is not necessary to reach a decision with respect to the period prior to that date.

With respect to the remainder of the period prior to actual notice to Maryland, the president of Falcon was aware of the claim being asserted against Falcon and he had a duty to inform Maryland promptly.

The president apparently was aware of the need to notify the insurer and was the person who carried the responsibility for such notification and, hence, he had the duty to see that the notification was given. Not only did he have the duty to see that proper notification was sent, but proper business procedure required that in the absence of an acknowledgement from the insurer's agent, there be follow-up to assure that the notice had been received. A proper means of notification would have involved more than merely casually sending of a copy of a reply letter directed to someone else; instead it would have involved a direct communication to the insurer's agent.

■ Falcon's president explains his failure to give notice to Maryland in August, 1972 by the failure of his secretary to carry out his instruction that a copy of his letter of August 15, 1972 to the decedent's workmen's compensation carrier be sent to Maryland. While this might be satisfactory explanation for a few days after August 15, 1972 until a response might reasonably be expected from Maryland, its effect ended at that time, and it was the responsibility of the president to take further action when no response was forthcoming. A person cannot avoid the consequences of action or inaction merely because he delegated the matter to an employee. Nor can one avoid the responsibility for the negligent performance of an employee.

Approximately nine months elapsed between the letter notification to Falcon of the claim and the filing of the suit. Any substantial lapse of time after purported notification without contact by the insurer's investigator would serve as some indication that the insurer had not received the notice, since common practice of insurers is to investigate the facts as promptly as possible after receipt of notice of claim. Falcon's president was not naive to the practices between insurers and insured businesses.

Falcon tries to avoid the consequences of the delay on the ground that it merely involved excusable neglect as contemplated by Civil Rules of the Court.

■ In considering the meaning of the phrase "excusable neglect" under a rule which permitted relief based on excusable neglect, this Court held in *Cohen v. Brandywine Raceway Association*, Del.Super., 238 A.2d 320 (1968) that excusable neglect is that sort of neglect "which might have been the act of a reasonably prudent person under the circumstances," and that mere negligence or carelessness without a valid reason is not sufficient to constitute excusable neglect. Assuming without deciding that the concept of excusable neglect is applicable to notice to insurers, Falcon's delay does not meet the test of excusable neglect.

I conclude that the delay in notification was an unreasonable delay and that notice was not given within a reasonable time under the facts and circumstances present here.

II

■ Maryland contends that the failure of Falcon to notify Maryland of the claim prior to suit in May, 1973 was an actual election by Falcon not to involve Maryland in the claim. Maryland asserts that by this device, Falcon was seeking to make a settlement on its own, thereby avoiding an increase in Maryland's insurance premium. There is no evidence that Falcon attempted such negotiation, and from the length of time which elapsed without negotiation plus the prompt notice to Maryland when suit was brought against Falcon, the only conclusion is that Falcon did not embark on such a course of action. The Falcon actions between August 9 and August 15, 1972 do not reasonably justify Maryland's contention. If Falcon unilaterally made such an election and undertook such a course, Maryland never was informed of

it, and Falcon did not hold to that course. It did actually notify Maryland in May, 1973 and the issue is whether that notification meets the applicable test.

### III

Having determined that notice was not given within a reasonable time under the facts and circumstances of this case and that there was inexcusable delay, it is necessary to consider whether prejudice has resulted to Maryland from the delay in notification. *State Farm Mutual Automobile Insurance Co. v. Johnson,* supra. In order to determine this, the Court must consider in what manner Maryland finds itself in a less favorable position to defend Falcon against the claim of the deceased employee's widow by virtue of receipt of the notice in May, 1973 rather than in the summer of 1972.

A Maryland claims official stated that in investigating a claim of this seriousness photographs would be taken of the site as it appeared at the time of the accident, potential witnesses would be identified, and three or four adjusters would be assigned to canvass the possible witnesses as quickly as possible. He emphasized that members of the building trades who engage in this type of construction frequently move around the country and after any lapse of time may be difficult to locate or unwilling to discuss the matter. Also, the insurer would try to establish an amicable relationship to the claimant in order to avoid law suit. In addition, he contends that the various insurers could negotiate with each other and with the workmen's compensation carrier for the employer of the deceased person and resolve the rights at an early date. He contended that since plaintiff has had an opportunity to interview the witnesses, their testimony would be "molded" in favor of plaintiffs and against Maryland. He emphasized the possibility that union shop stewards would cause the testimony of witnesses to be slanted after time had elapsed.

All of the above is by way of generalization from which Maryland assumes without any real investigation or determination that matters have been lost or distorted. Accepting Maryland's witnesses as experts, their testimony as to the effect of delayed notice was for the most part mere speculation as far as their applicability to the circumstances of this case is concerned, since they lacked sufficient specific factual information upon which to base a sound opinion.

Certain evidentiary information is available to Maryland. Within two weeks after the death, Liberty Mutual, general public liability carrier for the general contractor, made an investigation. The Liberty Mutual file includes a three-page report made by the general contractor, the names and addresses of carpenters who were familiar with the area from which the deceased fell, taped interviews with two workmen who were on the job at the time, William Allen and Dom Barra, ten photographs of the area taken July 11, eight days after the death, and an autopsy report. No other witnesses were discovered by the Liberty Mutual investigation. There were two photographs of the hole through which the decedent fell and the barricade which were taken shortly after the accident which were turned over to the general contractor and it is not known whether they are presently available. Maryland discounts the value of the Liberty Mutual investigation on the basis that it was not treated by Liberty Mutual as a complete, thorough investigation and that neither Liberty Mutual nor the general contractor pursued this matter diligently inasmuch as the general contractor was protected by an indemnity agreement with the subcontractor who was the employer of the deceased. Although Liberty Mutual's manager testified that he found the investigation to be inadequate, he did not indicate in what way he considered it to be inadequate, and it will be noted that he did not take any steps to overcome this purported inadequacy.

Maryland also contends that the Liberty Mutual investigation "was wholly antagonistic to the interest of Falcon" and that it would have been oriented to placing the blame on Falcon. This is premised on the unrealistic assumption that an investigation would only deal with witnesses and matters which might conceivably be favorable to the general contractor and that the investigator would close his eyes and fail to report potential evidence which might be hostile to the general contractor. This is inconceivable, since it is a generally accepted proposition that in order that a matter can be properly evaluated and in order that an effective defense to a claim can be made it is necessary to know the full extent and strength of any opposition evidence. The proposition pressed by Maryland in this respect cannot be accepted.

Maryland's emphasis upon the molding of witnesses' testimony raises certain questions. It presupposes that ultimate testimony in court is merely the product of the suggestions of investigators, that the function of investigators is not to ascertain what the witnesses know but rather to lock in the witnesses' minds the information which the investigators wish to deposit there. To the extent that such practices may exist, they are not entitled to encouragement or protection from the Court.

With respect to the loss of opportunity to adjust the claim, namely, to establish good will with the deceased's widow, it can be said that only the most naive person could be expected to reach any settlement in a death case without consulting an attorney, that if the person did consult an attorney, any settlement with him would be upon the hard economic facts and law of the case, and that since the widow would be receiving workmen's compensation, it would be expected that the workmen's compensation carrier would assert subrogation rights against Falcon and that this would undoubtedly bring lawyers into the picture.

A person who has suffered injury or death is entitled to be fairly compensated according to the applicable facts and law. This can be most effectively accomplished in an unemotional setting free of artificial friendship or the currying of favor and founded upon competent legal advice.[1]

The loss of the insurer's opportunity to talk to a party before he employs an attorney does not rise to the status of disqualifying prejudice. *Young v. Travelers Ins. Co.*, 5 Cir., 119 F.2d 877 (1941).

■ Much of Maryland's claimed prejudice rests on steps which its manager contends would have been taken within a few hours or at most within a few days after the accident.[2] It is predicated on immediate notification to the insurer. This contemplates a promptness of notification which the authorities cited by Maryland do not compel. The test is not what the insurer might have done, but rather what results it is probable would have been produced if the insurer had been given the opportunity to function upon receipt of timely notice. Prejudice must be determined based upon loss of substance and not merely loss of opportunity for the insurer to follow its established procedures. *Young*

---

1. "A. . . . And I'm telling you you have deprived me of the right to practice my art, and that's adjusting a loss. You have taken that away from Maryland Casualty. You have taken the insurance company out of this case, and you put lawyers there, and now we find ourselves in the lawsuit, Mr. Rothschild."

2. "Q. Okay. So it's your testimony that after July 7th Maryland Casualty could not have done a competent investigation of this accident which happened on July 3rd?
"A. From an investigative point?
"Q. That's correct.
"A. Yes, sir.
"Q. So it's your further testimony then that as of the close of business on July 7, 1972, Maryland Casualty had been irreparably prejudiced in its ability to represent and defend Falcon Steel in connection with the accident which happened on July 3rd?
"A. Yes, sir."

v. *Travelers Ins. Co.,* supra; *Abington Mutual Fire Insurance Company v. Drew,* 109 N.H. 464, 254 A.2d 829 (1969).

■■ The question of whether or not the delay in notification has caused prejudice to Maryland must be based on evidence and reasonable inferences and cannot be left to mere speculation. *Riegel v. Aastad,* Del.Supr., 272 A.2d 715 (1970); *2 Jones on Evidence* § 14:2, p. 582. The burden of proving prejudice is upon Maryland. *State Farm Mutual Automobile Insurance Company v. Johnson,* supra; *State v. National Automobile Insurance Company,* Del.Ch., 290 A.2d 675 (1972). It is clear that the Delaware Supreme Court in *Johnson* rejected the concept that mere passage of time creates the kind of prejudice which bars recovery against an insurer. It is obvious that every diligent insurer upon prompt receipt of notice would take steps to preserve and perpetuate evidence and that it could be surmised that this might not be done as effectively at a later time. If this is all that *Johnson* stands for, it would not have been necessary for the Court to give the full consideration to the subject of prejudice which it did. Clearly, the Court had in mind that such a showing of prejudice must be founded upon evidence of actual loss or detriment. In order to carry this burden, an insurer must show that evidence which it is reasonably probable could have been developed by prompt investigation has not or cannot be developed by later investigation or that in some other respect it is reasonably probable that a resolution of the claim could have been reached if prompt notice had been given which cannot be reached after the late notice. *Hawkeye-Security Insurance Company v. Davis,* 8 Cir., 277 F.2d 765 (1960); *St. Paul Fire and Marine Insurance Company v. Petzold,* 1 Cir., 418 F.2d 303 (1969); *Allstate Insurance Company v. Truck Insurance Exchange,* 63 Wis.2d 148, 216 N.W.2d 205 (1974); *Lindus v. Northern Insurance Company of New York,* 103 Ariz. 160, 438 P.2d 311 (1968); *Lumberman's Mutual*

*Casualty Company v. Oliver,* 115 N.H. 141, 335 A.2d 666 (1975); *Young v. Travelers Ins. Co.,* supra.

Maryland cites *Lilly v. Ohio Casualty Insurance Company,* D.Del., 234 F.Supp. 53 (1964) in support of its position that Falcon is not entitled to recover. *Lilly* was decided prior to the Delaware Supreme Court decision in *Johnson* and it is clear that insofar as the issues of this case are concerned the Federal District Court applied a different test than was subsequently established in *Johnson.* This case must apply the *Johnson* test.

The cases from other jurisdictions relied on by Maryland are factually distinguishable or rest upon different principles from those announced by the Delaware Supreme Court in *Johnson.* *Resseguie v. American Mutual Liability Insurance Co.,* 51 Wis. 2d 92, 186 N.W.2d 236 (1971) and *Commercial Contractors Corp. v. American Insurance Co.,* 152 Conn. 31, 202 A.2d 498 (1964) apply the rule that the insured has the burden of proving that the insurer has not been prejudiced by delay in giving notice. *Allstate Insurance Co. v. Hoffman,* 21 Ill.App. 2d 314, 158 N.E.2d 428 (1959) found prejudice to be inherent in a 23-month delay in giving notice, and *Purefoy v. Pacific Automobile Indemnity Exchange,* 5 Cal.2d 81, 53 P.2d 155 (1935) presumed prejudice from a 15-month delay. *Wehner v. Foster,* 331 Mich. 113, 49 N.W.2d 87 (1951) held that the testimony by a claims manager relating prejudice growing out of delay was sufficient in the absence of countering evidence to sustain the insurer's burden of proving prejudice. From the opinion in *Wehner,* supra, it appears that the Michigan Court accepted the proposition announced in *Purefoy,* supra, that prejudice must be presumed from delay. The cases do not apply the evidentiary test contemplated by *Johnson.*

■ The evidentiary situation in this instance is uncommon in that since it occurred on a construction job site the likely

witnesses were workmen on the job. It has not been shown that the identification of these employees was not available or that they could not have been located upon reasonable effort. There is no indication what statements or other evidence may have been developed by the deceased's employer which, according to Maryland, was liable to the general contractor for reimbursement, or what statements may have been taken by any other subcontractor on the job. There is no showing that the carpenters whose names were developed by Liberty Mutual are unavailable to testify; there has been no diligent effort to transcribe by available means the recorded statements given by Allen and Barra and made by Liberty Mutual, nor has it been shown that they are unavailable to give testimony after Maryland was notified of the claim. In order to carry its burden, Maryland had to present more pertaining to the situation in this instance than passive protestation and speculation. I conclude that Maryland has not carried its burden of establishing prejudice as that phrase was used by the Supreme Court in *Johnson*.

Accordingly, judgment will be entered in favor of plaintiff. Plaintiff shall present an appropriate order upon notice or approval.