Adam AUSTIN-WHITE, by his Guardian ad Litem, Ardell W. Skow, Milo D. White and Jane A. Austin, Plaintiffs-Appellants,

v.

Todd C. YOUNG, Defendant,

AUSTIN MUTUAL INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 04–0943. Submitted on briefs December 6, 2004.—Decided February 1, 2005.*

2005 WI App 52

(Also reported in 694 N.W.2d 436.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Ardell W. Skow* and *Martha H. Heidt* of *Doar, Drill & Skow, S.C.* of Baldwin.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Thomas D. McCormick* of *McCormick Law Office, P.A.* of Hudson.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Adam Austin-White appeals a summary judgment granted to Austin Mutual Insurance Company (AMI), which determined AMI did not have to extend either uninsured motorist coverage or medical payments coverage to Austin-White following an accident caused by Todd Young. The court concluded that Young was not using a covered vehicle under Austin-White's uninsured motorist coverage and that Austin-White did not meet the definition of an insured for the medical coverage. We agree that Austin-White is not an insured under the medical payments section of the insurance policy. However, we conclude that under the "complete operation" doctrine, Young was loading a pickup truck—an insured use of a covered vehicle—at the time of the accident. AMI therefore must extend coverage based on the uninsured motorist coverage

424

section of the policy. Accordingly, we affirm in part, reverse in part, and remand the cause.

## Background

¶ 2. On August 3, 2001, Austin-White was with Todd Young at Young's home. Young had previously hired Austin-White on several occasions to help with odd jobs and, on that day, Austin-White had assisted with some landscaping. Following a break, Young decided to scrap an inoperable dump truck he had at the site.

¶ 3. Young removed the dump truck's tailgate. The gate had chains attached, which controlled how far the gate could open when on the truck, but Young did not remove them. Austin-White was not assisting in this task. He had been instructed to wait near Young's flatbed pickup truck because once Young finished with the gate, he was going to take Austin-White home.

¶ 4. Because the gate was too heavy to lift, Young loaded the tailgate onto his Bobcat, a "skid-steer loader," and piled the chains on the top of the gate without securing them. He intended to load the gate onto the pickup truck's bed. As Young approached the truck on the Bobcat, Austin-White, who had been leaning on the pickup truck's driver's door, began walking towards the passenger side of the pickup truck so as to be out of Young's way. However, one of the chains slid off the top of the gate and caught under the Bobcat's wheel, pulling the gate down. It landed on Austin-White, injuring his leg.

¶ 5. Young's vehicles were uninsured. AMI issued an insurance policy to Austin-White's parents that included uninsured motorist coverage as well as medical payments coverage. Austin-White filed this action

against Young and AMI.[1] The parties filed cross-motions for summary judgment. The circuit court granted Austin-White's motion on the issue of Young's liability, and later granted AMI's motion on the issue of coverage. The court determined Young was operating only the Bobcat and it was not a covered vehicle under the uninsured motorist provisions. The court also determined that under the medical payments provisions, Austin-White did not meet the definition of an insured. Austin-White appeals.

## Discussion

¶ 6. We review summary judgment decisions de novo, using the same methodology as the circuit court. *Guenther v. City of Onalaska*, 223 Wis. 2d 206, 210, 588 N.W.2d 375 (Ct. App. 1998). The methodology is well known and need not be repeated here, except to say that summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Walker v. Tobin*, 209 Wis. 2d 72, 76, 568 N.W.2d 303 (Ct. App. 1997). We are also called upon in this case to interpret an insurance policy, which presents a question of law that we also review de novo. *Guenther*, 223 Wis. 2d at 210.

## I. Uninsured Motorist Coverage

¶ 7. The AMI uninsured motorist coverage section provides that AMI will pay damages an insured is entitled to recover from the owner or operator of an

---

[1] Young's girlfriend owned the property and there was also a claim filed with her homeowner's insurance, but that was resolved prior to this appeal.

uninsured motor vehicle because of bodily injury sustained by an insured and caused by an accident. There is no dispute that Austin-White is an insured under the policy for purposes of this provision. The contentious phrase in this case states: "The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the 'uninsured motor vehicle.' "

¶ 8. The only question is whether Young's ownership, maintenance, or use of the pickup truck caused Austin-White's injuries. There are three elements to this accident: the dump truck's tailgate, the Bobcat, and the pickup truck. We first reject, as a matter of law, the contention that because Austin-White was hit with the tailgate, he was hit by a motor vehicle. It is clear that the dump truck was being disposed of in pieces. It was scrap metal that previously comprised a dump truck, but the gate was not, at the time, actually a vehicle. Second, we note that both parties agree the Bobcat itself is not a covered vehicle under the policy.

¶ 9. It is undisputed that the pickup truck qualifies as an "uninsured motor vehicle," but the parties disagree on whether the truck was in "use" at the time. Austin-White contends there is liability for the use of loading the pickup truck based on the "complete operation" doctrine. AMI denies any liability because only the Bobcat was in operation and, contrary to Austin-White's contention, Young was not in the process of loading the truck but was in fact several feet away.

¶ 10. We conclude Young was in the process of using his pickup truck when Austin-White was injured. "As used in a liability insurance policy, the words 'arising out of' are very broad, general, and comprehen-

sive. They . . . require only that there be some causal relationship between the injury and the risk for which coverage is provided." *Lawver v. Boling*, 71 Wis. 2d 408, 415, 238 N.W.2d 514 (1976). "As it is used in the coverage clause of an automobile liability policy, the phrase 'arising out of' is not so much concerned with causation as it is with defining the risk for which coverage will be afforded." *Id.* at 415–16.

¶ 11. "In determining whether the negligent act that caused a bodily injury arose out of the 'use' of a motor vehicle within the coverage of a motor vehicle liability policy, the court must consider whether it was a natural and reasonable incident or consequence of the use of the vehicle . . . ." *See Allstate Ins. Co. v. Truck Ins. Exch.*, 63 Wis. 2d 148, 160, 216 N.W.2d 205 (1974) (citation omitted). That is, the "question is usually resolved by determining whether the alleged 'use' is one which is reasonably consistent with the inherent nature of the vehicle . . . . That the activities could possibly have been carried on, and the accident taken place, without the use of the vehicle is irrelevant." *Lawver*, 71 Wis. 2d at 416. "[O]nce the general activities which involve the vehicle can be said to constitute a covered 'use' of that vehicle, it makes no difference, for coverage purposes, whether the negligent act for which liability attaches[2] occurs in the actual operation of the vehicle or in some other aspect of that 'use.' " *Id.*

---

[2] AMI contends that Austin-White cites "many cases interpreting what constitutes 'use' of a motor vehicle [but] they don't adequately address the issue of liability arising out of Young's alleged 'use' of the dump truck and pickup. . . . Merely citing cases in which 'use' has been interpreted does not sufficiently address the issue of how 'liability' attaches to the 'use.' "

¶ 12. "Loading and unloading . . . constitutes the 'use' of the vehicle in spite of the absence of any specific 'loading and unloading' clause from the policy." *Allstate*, 63 Wis. 2d at 158. For there to be coverage, a person must be actively engaged in loading or unloading and the negligent act must be part of that activity. *See Amery Motor Co. v. Corey*, 46 Wis. 2d 291, 297, 174 N.W.2d 540 (1970). Thus, the question is whether Young's use of the Bobcat to lift the tailgate was a part of loading the pickup truck and was a reasonably consistent use of the truck. We answer both parts of that question affirmatively.

¶ 13. Using a pickup truck, flatbed or otherwise, to transport cargo is part of the truck's inherent nature. The bed portion of a truck is not intended for passengers, meaning transportation of cargo, including scrap metal, is the very purpose of the design.

¶ 14. We are satisfied that this case is controlled by precedent applying the "complete operation" doctrine. In adopting this doctrine, the supreme court noted that the doctrine "contemplates that the loading commences when the items of cargo leave their original location on the way toward the vehicle . . . ." *Komorowski v. Kozicki*, 45 Wis. 2d 95, 101, 172 N.W.2d 329 (1969) (citation omitted). Moreover, loading and unloading "are an extension of the use clause and cover

---

The circuit court granted summary judgment to Austin-White on the issue of Young's liability but rejected the idea that Young was using a motor vehicle defined by the policy. AMI did not cross-appeal the summary judgment finding of liability. The only remaining question, therefore, is whether Austin-White was injured by Young's use of an uninsured motor vehicle. That is, liability has already been established; coverage has not.

operations or acts in which the movement of the truck itself does not play a part." *Id.* at 104 (citation omitted).

¶ 15. It is undisputed that Young was in the process of moving the tailgate onto the flatbed of the pickup truck. To do this, he needed to transport the gate from its original location. That he used the Bobcat is irrelevant—it was simply a necessary, preparatory act preceding his setting the gate on the flatbed. The pickup truck is a covered vehicle under the AMI policy, Austin-White's injuries occurred while Young was in the "complete operation" of loading the pickup, and the loading is a covered use. Therefore, Austin-White is covered under the uninsured motorist provisions of the policy.

## II. Medical Payments

¶ 16. According to a separate section of the policy, AMI will pay reasonable medical expenses incurred due to bodily injury caused by an accident and sustained by an insured. For purposes of the medical expenses clause, "insured" means:

> 1. You or any "family member":
>
> > a. While "occupying"; or
> >
> > b. As a pedestrian when struck by;
>
> a motor vehicle designed for use mainly on public roads or a trailer of any type.

In the policy, "occupying" means "in, upon, getting in, on, out or off."

¶ 17. Under subsection (1)(b), Austin-White contends that because he was struck by the dump truck's tailgate, he was struck by a motor vehicle and is entitled

to payment as a matter of law. As mentioned earlier in this opinion, we reject the notion that the dump truck, disassembled into scrap metal, constitutes a motor vehicle.

¶ 18. Under subsection (1)(a), Austin-White contends there is a factual dispute as to whether he was occupying the pickup truck. We disagree. According to his own testimony, he was walking around to the passenger side of the truck. He was not in the truck, upon the truck, or getting into, onto, out of, or off of the truck.[3] Moreover, it strikes us as inconsistent to argue, even in the alternative, that he was a pedestrian entitled to judgment as a matter of law, but that he was also occupying the pickup truck under disputed facts.

¶ 19. In any event, Austin-White was not struck by a motor vehicle, nor was he occupying a motor vehicle at the time of his injury. For purposes of the medical payments provision, he is not insured by AMI.

*By the Court.*—Judgment affirmed in part; reversed in part, and cause remanded. No costs.

---

[3] Even if he was leaning against the pickup truck's driver's door, we do not think this constitutes occupying the truck under any portion of the definition.