Paul A. ZARNSTORFF and Nadine B. Zarnstorff,
Plaintiffs-Appellants,†

v.

NEENAH CREEK CUSTOM TRUCKING,
Defendant,

ACUITY, a mutual insurance company,
Defendant-Respondent.

Court of Appeals

*No. 2009AP1321. Submitted on briefs June 8, 2010.
—Decided October 14, 2010.*

2010 WI App 147

(Also reported in 792 N.W.2d 594.)

† Petition for Review Filed.

174

175

177

178

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Susan R. Tyndall* of *CMT Legal Group, Ltd.*, Waukesha, and *David Rapoport* of *Rapoport Law Offices, P.C.*, Chicago.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michelle D. Johnson* and *Arthur P. Simpson* of *Simpson & Deardorff, S.C.*, Milwaukee.

Before Vergeront, P.J., Lundsten and Higginbotham, JJ.

¶ 1. VERGERONT, P.J. The primary issue on this appeal is whether the auto exclusion in the commercial general liability (CGL) policy issued by Acuity, a mutual insurance company, to Neenah Creek Custom Trucking applies to exclude coverage for injuries sustained by Paul and Nadine Zarnstorff. They were injured in an accident that occurred when a Neenah Trucking employee ran across the highway after checking to see whether a tractor and the trailer it pulled (semi) could fit under the underpass. The semi was being operated by another employee. The circuit court concluded the exclusion applies. The Zarnstorffs appeal. We agree with the circuit court. We conclude that the conduct of the person in crossing the highway to assess the height of the underpass for the purpose of assisting the driver of the semi arises out of the use of the semi. Therefore, the conduct of that person, like that of the driver, comes within the auto exclusion of the CGL policy. For the reasons we explain in this opinion, this conclusion means that the conduct of the person crossing the highway is not an independent concurrent cause of the Zarnstorffs' injuries.

¶ 2. The Zarnstorffs also appeal the circuit court's denial of their post-verdict motion to preclude Acuity from contesting coverage under the CGL policy because it did not produce this policy in response to discovery requests or during the trial. Acuity did produce pre-trial the commercial auto policy it had issued Neenah Trucking, did not contest coverage under this policy, and paid the Zarnstorffs the available policy limit under the auto policy after a verdict was returned in the Zarnstorffs' favor. We conclude, based on the facts of this case and the arguments presented, that the circuit court did not erroneously exercise its discretion in declining to impose the requested sanction.

¶ 3. Accordingly, we affirm the circuit court's decision on motions after verdict and its final order dismissing the action upon a finding that Acuity has satisfied the Zarnstorffs' judgment against it by paying $995,000 under the auto policy.

## BACKGROUND

¶ 4. The following facts are not disputed for the purposes of this appeal. Two employees of Neenah Trucking, Robert Korb and Joe Houle, loaded a log skidder onto a trailer for transport. Korb was to drive the tractor pulling the trailer on Interstate Highway I-39, a four-lane divided highway. Korb and Houle were unsure whether the semi would clear the two highway overpasses on their route, so Houle accompanied the semi in his own car to check for clearance.

¶ 5. As Korb approached one of the overpasses, heading south, he came to a near stop, blocking the right lane of highway traffic. Houle pulled off the highway beyond the overpass. He ran across two lanes of the highway to the center median to gauge whether the trailer and its load would fit under the overpass.

¶ 6. At this time the Zarnstorffs were driving southbound on the highway in the left lane, with another driver, William Wegert, in front of them in the same lane. When Wegert was approximately 300 or 400 feet from the overpass, Wegert saw Houle run across the highway to the center median. When Wegert was about 20 feet from Houle, Houle dashed back across the highway in front of Wegert. Wegert braked rapidly to avoid hitting Houle. Unaware of Houle's actions, Paul Zarnstorff braked when he saw Wegert brake, but was unable to stop fast enough to avoid rear-ending Wegert. Paul Zarnstorff sustained major injuries as a result of the collision, and Nadine Zarnstorff sustained minor injuries.

¶ 7. The Zarnstorffs filed this action against Neenah Creek and its insurer, Acuity. The first amended complaint alleged that the negligent acts of Neenah Creek, committed by its employees Korb and Houle, caused injuries to the Zarnstorffs. Korb, the complaint alleged, was negligent in stopping the vehicle where he did and in the operation of the vehicle. Houle, the complaint alleged, was negligent in failing to maintain a proper lookout, failing to yield the right of way to approaching vehicles, and impeding traffic. The Zarnstorffs sought recovery from Acuity under the commercial auto policy it had issued Neenah Trucking. Neenah Trucking did not dispute coverage. This policy has a limit of $1,000,000, of which $995,000 was available to the Zarnstorffs. The jury returned a verdict of $1,947,675.24 in damages, which was reduced to $1,558,140.19 due to Paul Zarnstorff's contributory negligence.

¶ 8. After the verdict was rendered, the Zarnstorffs learned that Acuity had also issued Neenah Creek a commercial general liability (CGL) policy. We discuss

more details on this occurrence later in the opinion. For the present, it suffices to say that the Zarnstorffs and Acuity disagreed whether this policy provided coverage. Acuity, Neenah Creek, and the Zarnstorffs stipulated to the entry of an order for partial judgment and partial satisfaction of judgment pursuant to which Acuity paid the full $995,000 available under the auto policy in exchange for the Zarnstorffs' agreement not to collect the judgment balance of $563,140.19 from Neenah Creek or its employees. The stipulated order further provided that the dispute over coverage under the CGL policy for the judgment balance would be resolved in the post-trial phase of the litigation.

¶ 9. In the circuit court briefing on the CGL policy, Acuity contended the CGL policy did not provide coverage because of the exclusion for "[b]odily injury or property damage arising out of the . . . use . . . of any . . . auto . . . owned or operated by . . . any insured. Use includes operation and loading or unloading."[1] The Zarnstorffs acknowledged that this exclusion applied to Korb's conduct in operating the semi. However, they contended this exclusion did not apply to Houle's conduct in crossing the highway in front of the Wegert vehicle because that conduct was not a "use" of the semi.

¶ 10. The Zarnstorffs also argued that, whether or not the exclusion in the CGL policy applied, Acuity

[1] Acuity also contended that the mobile equipment exclusion was applicable. This provision excludes coverage for "[b]odily injury or property damage arising out of: [t]he transportation of mobile equipment by an auto owned or operated by . . . any insured." The circuit court concluded this was applicable, and the Zarnstorffs challenge this ruling on appeal. Because we conclude coverage for Houle's negligence in running across the highway is excluded under the auto exclusion, it is unnecessary to address the mobile equipment exclusion.

should be estopped from denying coverage because it failed to produce the CGL policy before or during trial in response to discovery requests.

¶ 11. The circuit court concluded that Houle's conduct arose out of the use of the semi, and thus the auto exclusion applied. The circuit court declined to preclude Acuity from contesting coverage as a sanction. The court therefore granted Acuity's motion to limit the Zarnstorffs' recovery on the verdict to the auto policy limits.

## DISCUSSION

¶ 12. On appeal the Zarnstorffs contend the circuit court erred in deciding there was no coverage under the CGL policy for Houle's conduct in crossing the highway. They assert that this policy plainly makes an initial grant of coverage and the auto exclusion does not apply because, under *Lawver v. Boling*, 71 Wis. 2d 408, 238 N.W.2d 514 (1976), Houle's negligent conduct was an independent concurrent cause of their injuries. They acknowledge that Korb's negligent conduct in operating the vehicle is excluded.

¶ 13. Acuity responds that Houle's conduct is not an independent concurrent cause because it arose out of use of the vehicle and therefore comes within the exclusion. Acuity does not dispute that Houle's conduct comes within the CGL policy's initial grant of coverage and therefore it is covered unless an exclusion is applicable. Acuity also does not contend that Houle's conduct was not negligent or that it was not a contributing cause of the Zarnstorffs' injuries.[2]

---

[2] The verdict questions did not differentiate between the negligence of Houle and Korb but asked whether Neenah Creek

¶ 14. The Zarnstorffs also challenge the court's decision not to estop Acuity from disputing coverage as a sanction for not producing the CGL policy before or during the trial. We discuss the parties' positions on this issue in Section II of this opinion.

## I. Auto Exclusion

█

¶ 15. Resolution of the parties' dispute over the applicability of the auto exclusion requires that we apply insurance policy language to undisputed facts. This presents a question of law, which we review de novo. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597 (1990).

¶ 16. We begin with a discussion of *Lawver*, on which the Zarnstorffs rely. In *Lawver*, 71 Wis. 2d at 410, as in this case, there was both an auto policy and a general liability policy. The accident occurred when the insured was operating a truck on his farm. *Id.* at 411. A rope that was tied to the back of the truck was attached to cables that were connected to a platform on which his son-in-law was working on barn repairs. *Id.* The rope broke and his son-in-law fell to the ground and was injured. *Id.* The auto policy provided coverage for damages because of " 'bodily injury . . . arising out of the ownership, maintenance or use' of an automobile." *Id.* at 412. The general liability policy provided coverage for all amounts the insured was " 'legally obligated to pay as damages because of bodily injury,' " but did not apply "to

was negligent, whether its negligence caused the Zarnstorffs injuries, and what its percentage of negligence was, "taking [its] negligence . . . to be the total negligence" of Korb, if any, Houle, if any, and another employee.

the ownership, maintenance, operation, use, loading or unloading of . . . automobiles." *Id.*[3]

¶ 17. The auto insurer in *Lawver* argued that the auto policy did not provide coverage because the injury arose out of negligence in selecting materials and making the rigging and did not arise out of use of the truck. *Id.* at 415. The supreme court rejected this argument, concluding the truck was an "integral part of the apparatus employed in repairing the barn" and was in operation at the time of the accident. *Id.* In arriving at this conclusion, the court stated: "[a]s used in a liability insurance policy, the words 'arising out of' are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk for which coverage is provided." *Id.* (citation omitted).

¶ 18. The court then turned to the issue of the exclusion in the general liability policy. The court stated the issue here to be "whether a conclusion that the injuries arose out of the use of the truck for purposes of establishing coverage under [the auto policy] is determinative of whether the truck was 'used' so as to exclude coverage under [the general liability] policy." *Id.* at 417. The court answered this question by adopting the rationale of a California case: if an accident is caused jointly by an excluded risk and an insured risk, the exclusion in the policy for the one does not exclude the other. *Id.* at 421–23. Applying this rationale to the facts before it, the court concluded that there was a

---

[3] We note that the auto exclusion in *Lawver v. Boling*, 71 Wis. 2d 408, 238 N.W.2d 514 (1976), did not contain the phrase "arising out of," which appears in Acuity's auto exclusion.

question of fact whether the injuries to the son-in-law resulted from an excluded risk (operation of the truck), or from a covered risk (negligence in choice of materials and manner of building the rigging), or both. *Id.* at 422. Accordingly, the court determined there was a question of fact on coverage under the general liability policy that required a trial. *Id.* at 422–23.

¶ 19. The *Lawver* court described the approach it adopted as giving to the "exclusionary clause in the [general liability] policy . . . a different, stricter construction than the similar coverage clause in the [auto policy]." *Id.* at 423. What the court meant by this is that, while there is coverage under the auto policy as long as there is a covered risk (despite the existence of an independent concurrent cause that is not covered), the auto exclusion in the general liability policy is construed narrowly to apply only to the excluded risk. *See id.* The result is coverage for an independent concurrent cause that does not come within the terms of the exclusion.

¶ 20. In arriving at this conclusion, the *Lawver* court explained that this type of stricter construction of the exclusionary clause is consistent with the rule that precludes a strict construction in the absence of an ambiguity. *Id.* at 423. This latter rule, the court pointed out, had been consistently adhered to in its cases, and the court was unwilling to deviate from it. *Id.* at 421–23.

¶ 21. Important to this appeal is the *Lawver* court's further discussion of the rule that precludes a strict construction in the absence of an ambiguity. Referring to the then-recent case, *Garriguenc v. Love*, 67 Wis. 2d 130, 226 N.W.2d 414 (1975), the court stated:

> In *Garriguenc* . . . the court recently rejected the contention that the phrase "arising out of," when used in a

> similar exclusionary clause, was ambiguous because it was not clear whether the exclusion applies only to injury caused by the conduct of the driver or to injury caused by any condition, whether directly or indirectly related to the use of an automobile. Instead, the court gave a broad construction to the phrase, citing the [California case] as authority. Moreover, an otherwise unambiguous provision is not rendered ambiguous simply because it is difficult to apply to the facts of a particular case.

*Lawver*, 71 Wis. 2d at 421–22 (citation omitted).

¶ 22. With this background on *Lawver*, we turn to the Zarnstorffs' arguments. They contend that, when "the issue is whether a loss is excluded by an auto exclusion, the inquiry is whether there was an independent concurrent cause." In their view, the circuit court erred because it did not make this inquiry. Instead, according to the Zarnstorffs, the court incorrectly gave a broad construction to the language "arising out of the . . . use . . . of any . . . auto" rather than the strict construction required for exclusions.

■

¶ 23. These arguments are based on a misreading of *Lawver* in two respects. First, it appears the Zarnstorffs are contending that the independent concurrent cause analysis is a substitute for determining whether the conduct at issue comes within the language of the exclusion. However, the independent concurrent cause analysis does not apply unless some injury-causing conduct *does* come within the language of the exclusion while other injury-causing conduct does not. In *Lawver* evidently no party argued that the negligence in choosing materials and constructing the rig constituted use of the truck, and the court assumed without discussion it did not constitute use of the truck. *See Lawver*, 71

Wis. 2d at 422 (describing any negligence in the operation of the truck as "an excluded risk" and any negligence in the choice of materials or manner of constructing the rigging as "a covered risk"). The dispute in *Lawver* was whether the exclusion should be interpreted to exclude coverage for the latter conduct as well as for the conduct that did constitute use of the truck, and it was resolved by the adoption of the independent concurrent cause doctrine. *Id.* at 417, 422–23. Nothing in *Lawver* suggests that the adoption of the independent cause doctrine makes it unnecessary to determine whether the conduct at issue comes within the language of the exclusionary clause.[4]

¶ 24. The Zarnstorffs also misunderstand the *Lawver* court's statement that its analysis requires "a different, stricter construction [of the exclusion in the general liability policy] than the similar coverage clause in the [auto] policy." *Lawver*, 71 Wis. 2d at 423. The *Lawver* court means that it is construing the exclusion so that it does not preclude coverage for allegedly negligent conduct that *does not* constitute use of the truck. *Id.* at 422–23. *Lawver* cannot be read to mean

---

[4] Similarly, neither *Bankert v. Threshermen's Mutual Insurance Co.*, 110 Wis. 2d 469, 480, 329 N.W.2d 150 (1983), nor *Smith v. State Farm Fire & Casualty Co.*, 192 Wis. 2d 322, 531 N.W.2d 376 (Ct. App. 1995), which the Zarnstorffs also cite in this context, suggest that the independent concurrent cause doctrine makes it unnecessary to determine whether the conduct at issue comes within the exclusion. In *Bankert* the court concluded that the independent concurrent cause doctrine did not apply because there was no cause that did not come within the language of that exclusion. *Bankert*, 110 Wis. 2d at 483–84. In *Smith* we determined that the independent concurrent cause doctrine did not apply because the asserted cause, though not within the language of the policy exclusion, was not actionable without the excluded risk. *Smith*, 192 Wis. 2d at 332–33.

that, apart from the independent cause doctrine, the language of an exclusion is strictly or narrowly construed regardless whether there is an ambiguity in the language. *Lawver* expressly rejected this approach and reaffirmed its adherence to the rule that, if there is no ambiguity in the language of an insurance contract, a court is precluded from applying a strict construction. *Id.* at 420–22. The *Lawver* court clearly meant that this rule applies to exclusions, as evidenced by its discussion of *Garriguenc,* 67 Wis. 2d 130, which addresses language in an exclusion.[5] *Lawver,* 71 Wis. 2d at 421–22.

¶ 25. The *Lawver* court's discussion of *Allstate Insurance Co. v. Truck Insurance Exchange,* 63 Wis. 2d 148, 216 N.W.2d 205 (1974), does not, as the Zarnstorffs contend, support a contrary reading. In *Allstate* the court concluded that it was a "use" of the vehicle to unload a hunting rifle from the vehicle and therefore there was coverage under the auto policy for the accidental shooting of one member of a hunting party during that unloading. *Id.* at 153, 159. The court also concluded that the homeowner policy auto exclusion applied because the loss arose out of the " 'loading or unloading' . . . of any automobile." *Id.* at 153, 157. In reaching its conclusion on the exclusion, the court noted that case law had given the term "loading" a broad

---

[5] It is true that the rule of construing ambiguities in insurance policies against the insurer will result in different constructions of the same language depending on whether it is contained in a coverage clause or an exclusion: the more expansive of two reasonable constructions is given the language in a coverage clause and the narrower is given the language in an exclusion. *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990). However, we emphasize that this rule does not come into play unless a court first determines that the language is ambiguous.

definition in the context of a coverage clause stating: "While most loading and unloading cases in Wisconsin are construing those terms as they are found in automobile policies, nonetheless, those cases are persuasive in defining the general meaning of those terms." *Id.* at 156. The *Allstate* court rejected the argument that the exclusion did not apply because a cause of the injury was the shooter's negligence in maintaining his rifle. *Id.* at 154.

¶ 26. The *Lawver* court discussed *Allstate* and contrasted it with the different rationale used in the California case "on almost identical facts." *Lawver*, 71 Wis. 2d at 418–20. Because the *Lawver* court adopted the approach of the California court, the *Lawver* court effectively overruled *Allstate* to the extent that the *Allstate* court did not apply the independent concurrent cause analysis to the negligent maintenance of the rifle—conduct that plainly did not come within the language of the exclusion. However, *Lawver* did not criticize or overrule the *Allstate* court's reliance on coverage-clause cases in deciding the meaning of the same terms used in an exclusion.

¶ 27. In summary, the independent concurrent cause doctrine comes into play *after* it is determined that there is injury-causing conduct that does not come within the exclusion. In determining whether particular conduct comes within the exclusion, we do not give the language a strict construction unless we first determine there is an ambiguity. If there is an ambiguity, then we interpret the language narrowly, against the insurer. *Smith*, 155 Wis. 2d at 811. On the other hand, if the language is not ambiguous, we may look to case law applying the same language in the context of a coverage clause. *See Allstate*, 63 Wis. 2d at 156.

¶ 28. With this clarification of *Lawver*, we take up the inquiry whether Houle's conduct in negligently crossing the highway "aris[es] out of the . . . use . . . of any . . . auto." The Zarnstorffs do not contend there is an ambiguity and we conclude this language is not ambiguous. As we have already noted, the *Lawver* court cited with approval the conclusion in *Garriguenc,* 67 Wis. 2d at 137, that the "arising out of" language in an exclusion is broad but not ambiguous. To the extent that the term "use of any auto" is difficult to apply on the facts of a particular case, this does not render the phrase ambiguous. *Lawver*, 71 Wis. 2d at 422.

¶ 29. There is no dispute that the semi here was being used for a purpose that is reasonably consistent with the inherent nature of such vehicles: to transport a load on the highway. There is also no dispute that Houle was crossing the highway for the purpose of assisting in the semi's travel on the highway by assessing the height of the underpass. The specific question is whether his conduct in crossing the highway "arises out of" the use of the semi. We conclude that it does.

¶ 30. As already noted, the term "arises out of" has a broad meaning and is commonly understood to mean "originating from, growing out of, or flowing from." *Garriguenc,* 67 Wis. 2d at 137. This broad meaning is bounded by the principle that we interpret and apply policy language to further the reasonable expectations of the contracting parties. *See Lawver*, 71 Wis. 2d at 416. It is to be reasonably expected that in operating a vehicle on the highway it may be necessary to assess a potential obstacle in order to determine whether or how to navigate it. It is also to be reasonably

191

expected that this assessment may at times best be done by being outside the vehicle. Accordingly, the activity of assessing a potential obstacle to a vehicle traveling on the highway from a vantage point outside the vehicle is an activity that flows from or arises out of the use of the vehicle. Whether it is the driver who gets out to look, or a passenger, or, as here, someone driving in tandem in another vehicle, the assessment of the potential obstacle has the same purpose: to facilitate the use of the vehicle in question as a means of transportation on the highway. Similarly, whether the assessment of the potential obstacle is made by standing on the side of the highway or crossing the highway to get a better view, the purpose and its connection to the vehicle remains the same.

¶ 31. The Zarnstorffs contend that Houle's negligence here was that of a pedestrian and therefore does not "arise out of the use of" the semi. However, the negligence need not be in the operation of the vehicle in order to come within this language. *See Garcia v. Regent Ins. Co.*, 167 Wis. 2d 287, 296, 481 N.W.2d 660 (Ct. App. 1992). By way of example, leaving a child in a vehicle is a use of the vehicle under the coverage clause of an automobile policy, *see Tasker v. Larson*, 149 Wis. 2d 756, 761, 439 N.W.2d 159 (Ct. App. 1989), and is excluded under an auto exclusion in a CGL policy with language identical to the language in Acuity's CGL policy. *See Estate of Jones v. Smith*, 2009 WI App 88, ¶¶ 2, 9, 320 Wis. 2d 470, 768 N.W.2d 245 (the van driver for a daycare center failed to remove a child from the van after arriving at the daycare center). The negligence in both *Tasker* and *Estate of Jones* is that of a person responsible for a small child who fails to exercise ordinary care; the negligence does not involve the operation of the vehicle.

192

¶ 32. The Zarnstorffs rely on the analysis in *Estate of Jones* of the risk that was *not* excluded under the CGL policy and was determined to be an independent concurrent cause. *Estate of Jones*, 320 Wis. 2d 470, ¶ 9. This was the negligence of the daycare staff who did not look for the child or inquire why she was not present on a day she was expected. *Id.* However, we conclude this conduct is not analogous to Houle's running across the highway. The daycare staff's failure to look for the child did not arise out of the use of the van, whereas Houle was engaged in an activity that was assisting the travel of the semi on the highway.

¶ 33. The Zarnstorffs also assert that *Saunders v. National Dairy Products Corp.*, 39 Wis. 2d 575, 159 N.W.2d 603 (1968), supports their position. We do not find *Saunders* to be instructive because it was decided before *Lawver* and its analysis is inconsistent with *Lawver*.

¶ 34. In *Saunders* the court concluded that the coverage clause for liability from " 'the use in [the insured's] business of any motor vehicle' " did not apply because the injuries the driver of a tractor-trailer unit sustained after getting out of the vehicle and slipping on ice were not "the proximate result" of the use of the vehicle. *Saunders*, 39 Wis. 2d at 582–83. The court stated that there is no coverage unless there is a "causal connection between the use and the acts causing liability" and, in that case, "[t]he presence of the tractor-trailer unit in no way contributed to the presence of the ice which caused plaintiff's injury." *Id.* The Zarnstorffs point to the fact that, when the driver in *Saunders* fell on the ice, he was walking toward the loading dock to ascertain whether the unit was in the proper loading position. They assert that this is analogous to Houle's

conduct in checking on the underpass, and therefore he was not using a vehicle, either.

■ ■

¶ 35. We do not see how to reconcile *Saunders* with *Lawver*. Under *Lawver*, as noted earlier, the language "arising out of the use of the vehicle" requires a causal connection between the use of the vehicle and the injuries but this connection "is not of the type which would ordinarily be necessary to warrant a finding of 'proximate cause' or 'substantial factor' as those terms are used in imposing liability for negligent conduct."[6] *Lawver*, 71 Wis. 2d at 415. Rather, the phrase "arising out of" is concerned with the connection between the activities which give rise to the injury and the vehicle. *Id.* at 415–16. The court in *Saunders* did not consider in its analysis that the driver was going to check on the position of the unit, apparently because of its conclusion that the use of the unit did not proximately cause or contribute to the cause of the injuries. *Saunders*, 39 Wis. 2d at 582–83. When we are unable to reconcile two supreme court cases, we follow the latter. *Kramer v. Board of Educ.*, 2001 WI App 244, ¶ 20, 248 Wis. 2d 333, 635 N.W. 2d 857. Accordingly, we follow *Lawver*, not *Saunders*.[7]

---

[6] Legal cause in negligence consists of two parts: (1) cause-in-fact, which requires that the negligence is a substantial factor in producing the injuries; and (2) public policy considerations that may result in denial of recovery even though there is cause-in-fact. *Fandrey v. American Family Mut. Ins. Co.*, 2004 WI 62, ¶ 12, 272 Wis. 2d 46, 680 N.W.2d 345. The term "proximate cause" was used in the past to refer to the public policy factors but is used no longer. *Id.*, ¶ 10 n.7.

[7] The Zarnstorffs also cite *Snouffer v. Williams*, 106 Wis. 2d 225, 229, 316 N.W.2d 141 (Ct. App. 1982), in support of their position. In that case the court concluded that the coverage

¶ 36. Because we conclude that Houle's conduct in running across the highway to assess the height of the underpass is conduct arising out of the use of the semi, we conclude the auto exclusion applies and there is no coverage for his negligence under the CGL policy.

II. Sanction of Precluding Acuity from Denying Coverage

¶ 37. The Zarnstorffs contend that, whether or not the CGL policy provides coverage, the circuit court erred in failing to preclude Acuity from challenging coverage as a sanction for not disclosing this policy in response to discovery requests.

¶ 38. Both the Zarnstorffs and Acuity submitted affidavits on this issue with attached discovery materials in support of their respective positions. Acuity

_____

grant in an auto policy for injuries arising out of the use of the automobile did not apply to injuries sustained by a passenger in a vehicle who was shot by a homeowner from his home after two other passengers got out of the vehicle and knocked over the homeowner's mailbox. *Id.* at 226–27. The court explained that, merely because "[t]he use of an automobile may result in a condition which is an essential part of the factual setting which later results in harm," that harm does not arise from the use of the automobile. *Id.* at 228 (citation omitted). The court concluded that the activities of the other two passengers in vandalizing the mailbox and the shooting in response "were wholly independent of the use of the vehicle." *Id.* at 229. For the reasons we have explained in paragraph 30 above, Houle's conduct in running across the highway is not wholly independent from the use of the semi.

We note that both parties bring to our attention cases from other jurisdictions. We do not discuss them because we conclude that Wisconsin law resolves the issue of the applicability of the auto exclusion in Acuity's CGL policy.

195

submitted the following interrogatory directed to Neenah Creek and the response dated September 7, 2007:

8. Were you the owner of any vehicle involved in the occurrence? If so, state whether you were named or covered under any policy, or policies, of liability insurance effective on the date of the occurrence and, if so, state the name of each such company or companies, the policy number or numbers, the effective period(s) and the maximum liability limits for each person and each occurrence, including umbrella or excess insurance coverage, property damage and medical payment coverage.

ANSWER: The semi truck and trailer were owned by Neenah Creek Custom Trucking, LLC and were insured by Acuity, a mutual insurance company, policy no. F88219 with limits of $1,000,000.00. Please see the certified insurance policy produced in response to the request for production.

¶ 39. Acuity also submitted the following document production request directed to Neenah Creek and the response dated September 7, 2007:

7. All applicable policies of insurances, including declaration pages, which may provide coverage for the incident complained of.

RESPONSE: Attached is a certified copy of the Acuity [auto] policy.

¶ 40. The Zarnstorffs submitted the same request and response to document production as did Acuity and, in addition, submitted an earlier interrogatory directed to Neenah Creek and the response dated December 15, 2006:[8]

---

[8] This set of interrogatories was apparently served on Neenah Creek and answered by it in an action filed by Wegert

19. State the name of each insurance company that provides the defendant with liability coverage for the incident referred to in the plaintiffs' complaint. Specify the limits of coverage afforded under each such policy and the policy number. This interrogatory is intended to include, but is not limited to, insurance coverage available through partnership agreements, corporations, extended coverage, reinsurance coverage and so-called "umbrella" coverage.

ANSWER: Acuity, a mutual insurance company, with liability limits of $1,000,000.00.

¶ 41. The Zarnstorffs contended in the circuit court, as they do on appeal, that its number seven request for documents shows that they were asking for any policy that *may* provide coverage. Acuity asserted in the circuit court, as it does on appeal, that, because of the allegations in the complaint and first amended complaint that specifically refer to Acuity's auto policy and because of the wording of the number eight interrogatory dated September 7, 2007, it did not have reason to understand until after the trial that the Zarnstorffs wanted to know about liability policies other than the auto policy.

¶ 42. The court denied the requested sanction on two primary grounds: (1) the insurance case law the Zarnstorffs provided did not support this sanction in the circumstances of this case; and (2) "[u]nder the facts of this case, the court will not expand the language of sec. 804.12 [discovery sanctions] to apply here." The court expressed the view that this statute "presumes a motion brought prior to or at trial."

against Neenah Creek and Acuity. After the Zarnstorffs filed this action in December 2006, the two actions were consolidated.

¶ 43. On appeal the Zarnstorffs argue that the circuit erred because nothing in WIS. STAT. § 804.12(4) (2007–08)[9] precludes the circuit court from imposing a sanction after a trial and verdict. They assert that the case law on the obligation of insurers supports the estoppel sanction they seek.

¶ 44. A decision to impose sanctions for discovery violations is committed to the circuit court's discretion, and we uphold discretionary decisions if they apply the correct law to the facts of record and reach a reasonable result. *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273, 470 N.W.2d 859 (1991). We review de novo the questions of law involved in a discretionary decision. *Robin K. v. Lamanda M.*, 2006 WI 68, ¶ 12, 291 Wis. 2d 333, 718 N.W.2d 38.

¶ 45. We first address the insurance cases on which the Zarnstorffs rely, *Liebovich v. Minnesota Insurance Co.*, 2008 WI 75, 310 Wis. 2d 751, 751 N.W.2d 764, and *Jansa v. Milwaukee Automobile Mutual Insurance Co.*, 18 Wis. 2d 145, 118 N.W.2d 149 (1962). We conclude they do not support the sanction they seek.

¶ 46. *Liebovich* cautions that an insurer's "unilateral refusal to defend without first attempting to seek judicial support for that refusal can . . . estop insurers from being able to further challenge coverage." *Liebovich*, 310 Wis. 2d 751, ¶ 55. As the circuit court stated, in this case Acuity did provide a defense to Neenah Creek and did provide coverage under the auto policy, and the parties agreed on a manner for post-trial judicial resolution of the coverage dispute under the CGL policy.

---

[9] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 47. *Jansa* holds that, if an insurer admits in any answer to having issued a policy to its insured but denies liability to the plaintiff and does not allege any limitation on liability by the terms of the policy, the policy cannot be admitted into evidence after the jury has reached its verdict unless the insurer has moved to amend its answer and the court has permitted the amendment in the proper exercise of its discretion. *Jansa*, 18 Wis. 2d at 150. The Zarnstorffs do not develop an argument that makes the reasoning of *Jansa* applicable to the facts of this case.

¶ 48. We next turn to the Zarnstorffs' contention that the circuit court has the authority under WIS. STAT. § 804.12(4)(c) and (d) to impose the sanction they seek and erroneously exercised its discretion in not doing so.[10] These subsections provide:

> (4) If a party . . . fails . . . (c) to serve a written response to a request for inspection submitted under s. 804.09, after proper service of the request, or (d) seasonably to supplement or amend a response when obligated to do so under s. 804.01(5), the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others, it may take any action authorized under sub. (2)(a)1., 2. and 3 . . . .

¶ 49. The Zarnstorffs' argument on WIS. STAT. § 804.12(4) is undeveloped in several important respects. First, the request for production of documents

---

[10] We are uncertain why the Zarnstorffs have included WIS. STAT. § 804.12(4)(d) relating to supplementing responses. They do not appear to be contending that Neenah Creek learned of the CGL policy after responding to the discovery request. *See* § 804.01(5)(b).

on which the Zarnstorffs rely, as well as the September 6, 2006, interrogatory they refer to, were both directed to Neenah Creek and answered by it. The Zarnstorffs do not explain how the language of WIS. STAT. §§ 804.12(4)(c) and (d), and 804.01(5), to which subsection (d) refers, can be reasonably construed to authorize sanctions on a party other than the party who was served and responded to the discovery requests. We recognize that before and during trial, Neenah Creek and Acuity were represented by the same attorney and submitted a joint answer to the complaint and amended complaint. However, if this fact makes them the same party for purposes of § 804.12(4), the Zarnstorffs do not explain why.

¶ 50. Second, even if we assume without deciding that this statute permits a circuit court to impose a sanction when a failure to give a complete answer to a discovery request comes to light after a trial and verdict, the Zarnstorffs do not address the standards that apply under the statute for the particular sanction they seek. Precluding Acuity from disputing coverage falls within WIS. STAT. § 804.12(2)(a)2.: "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses . . . ." This is a severe sanction and we conclude it therefore requires a finding of egregiousness on the part of Acuity. *See Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, ¶ 43, 299 Wis. 2d 81, 726 N.W.2d 898 (discussing § 804.12(2)(a) generally).

¶ 51. While the circuit court did not make an express determination on whether or not the conduct of Acuity was egregious, it is evident from the court's decision that it did not view Acuity's conduct to be egregious. This conclusion is supported by the record,

including: the ambiguity of the discovery requests when considered together, the allegations in the complaint and amended complaint regarding the auto policy, Neenah Creek/Acuity's counsel's affidavit explaining why he believed the Zarnstorffs were concerned only with the auto policy, and that attorney's willingness to inquire further about other Neenah Creek policies in response to a post-verdict letter from the Zarnstorffs and to produce the CGL policy he then learned about.

¶ 52. In addition, it is evident that the circuit court was influenced by the absence of prejudice to the Zarnstorffs. The existence or absence of prejudice is a relevant consideration in deciding whether a sanction is "just" as required by WIS. STAT. § 804.12(2)(a). *See Rupert v. Home Mut. Ins. Co.*, 138 Wis. 2d 1, 15, 405 N.W.2d 661 (Ct. App. 1987). The Zarnstorffs do not explain how they were prejudiced by the timing of learning about the CGL policy, and we can identify no prejudice. If the Zarnstorffs had learned of the existence of this policy from discovery responses, the same procedure would have occurred pre-trial as occurred after the verdict. The parties would have briefed the issue and the court would have decided as a matter of law whether the auto exclusion applied to Houle's conduct. The court decided the policy did not apply, and we have affirmed that.[11]

¶ 53. In short, the Zarnstorffs have not persuaded us that the circuit court erroneously exercised its discretion in deciding not to sanction Acuity by preclud-

[11] The Zarnstorffs do not argue that they incurred any additional expense because the CGL coverage issue was resolved post-verdict rather than pretrial, and they do not seek costs as a sanction.

ing it from contesting coverage under the CGL policy. This decision should not be read to suggest any weakening of the obligation of insurers and their insureds—like all other persons and parties served with discovery—to comply with the requirements of Wis. Stat. §§ 804.08–.11. Rather, we hold only that on the facts of this case and the arguments presented, the circuit court did not erroneously exercise its discretion in declining to impose the sanction of estopping Acuity from contesting coverage under the CGL policy.

## CONCLUSION

¶ 54. We affirm the circuit court's decision that Houle's conduct in crossing the highway is excluded by the auto exclusion of the CGL policy. We also affirm its decision declining to impose the sanction of precluding Acuity from contesting coverage under the CGL policy. Accordingly, we affirm the final order determining that Acuity has satisfied the judgment against it and dismissing the action.

*By the Court.*—Order affirmed.