ANNETTE KINGSLAND ZIEGLER, J. (concurring).
*591 ¶135 I agree with the result the court reaches. I concur and write separately because the analysis that the lead opinion employs to reach its conclusions is concerning. First, in my view, it is both unnecessary and inadvisable to rely on constitutional grounds for ending our practice of deferring to administrative agencies' conclusions of law. Deference to administrative agencies was a court-created doctrine and, thus, is one that can be court eliminated. We need not reach for the constitution to so act.
¶136 Second, in interpreting the statute here, the court[1] relies on ordinary meaning to define all five terms, even though two of them have statutory definitions. Additionally, the court relies on the surplusage canon as grounds for selectively defining necessarily broad terms, even though the complete overlap between the two statutorily-defined terms indicates that the legislature may well have intended for overlap among the undefined terms as well.
¶137 Nevertheless, I agree that " 'processing' encompasses Stuyvesant Dredging's separation of river sediment into its component parts." Majority op., ¶ 104. Accordingly, I respectfully concur.
I. INTERPRETING AND APPLYING THE LAW
¶138 The lead opinion reaches for the constitution unnecessarily. It states as follows:
As the deference doctrine developed ... [we did *592 not] determine whether this was consistent with the allocation of governmental power amongst the three branches. So, as a matter of first impression, we consider whether our deference doctrine is compatible with our constitution's grant of power to the judiciary ....
Lead op., ¶ 42. As the lead opinion acknowledges, our deference doctrine was a policy of judicial administration,[2] and, as *68 such, it is not essential to draw on constitutional principles to overturn it. See State v. Castillo, 213 Wis.2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds."); Gabler v. Crime Victims Rights Bd., 2017 WI 67, ¶¶ 51-53, 376 Wis.2d 147, 897 N.W.2d 384 ("This court does not normally decide constitutional questions if the case can be resolved on other grounds."). I depart with the lead opinion because the doctrine of constitutional avoidance requires that we act with restraint. In accordance with this principle, I would not rely on the constitution to overturn our judicially-created administrative deference doctrine.
¶139 Moreover, departing from deference on the basis of judicial administration would not call into question the continuing validity of the decades of cases that have relied on the deference doctrine. In this regard, I disagree with the lead opinion's assertions *593 that "[i]f [a decision] [was] final upon release of this opinion, [its] finality will go on undisturbed by our decision today";[3] and that "[c]onsequently [the] precedential and controlling effect [of past cases] will be the same as if the court had based the decision on its *594 own interpretation." Lead op., ¶¶ 89, 93. The lead opinion provides no support for these assertions and the constitutional tenor of its analysis suggests exactly the opposite. Accordingly, I agree with Justice Ann Walsh Bradley's concurrence that the lead opinion fails to adequately account for the effect its analysis will have on prior decisions.
¶140 Additionally, it is inadvisable to turn to the constitution and address the "core powers" of the judiciary in this case. The lead opinion's "core powers" analysis proceeds as follows: judicial power is vested *69 in the judiciary;[4] the doctrine of separation of powers is fundamental to government;[5] the powers of each branch of government fall into one of two categories-shared powers or exclusive/core powers;[6] the judiciary has the " 'exclusive responsibility to exercise judgment in cases and controversies arising under the law' ";[7] exercising judgment "encompasses interpreting and applying the law to the case ...";[8] therefore, "only the judiciary may authoritatively interpret and apply the law in cases before our courts."[9] In other words, the judiciary has constitutionally-conveyed jurisdiction to interpret and apply the law in cases and controversies before the courts. *595 ¶141 This conclusion is either quite remarkable or quite unremarkable; that is, if the lead opinion is breaking new ground in defining the power of the judiciary, that is remarkable, but if it is not, there is no need to remark on the court's role here because it is not disputed. Given that the lead opinion feels the need to so-remark, however, I feel compelled to caution that its comments should not be read more broadly for the proposition that the judiciary possesses exclusive authority to interpret and apply the law generally in all arenas. Although the lead opinion appears to agree that the power to interpret and apply the law more generally is shared among the branches,[10] its definition of the judiciary's "core power," see supra ¶ 140, is applied more broadly at times such that it could be read to abrogate the shared nature of the power to interpret and apply the law.[11] This lead opinion is not to be read so broadly. *596 ¶142 In sum, I would not reach the constitutional issue because reversal on judicial administration grounds is more appropriate: that which the court administratively gives, the court can administratively take away, and doing so on the basis of judicial administration would not require undermining the decades of cases that did rely on the deference doctrine because, at the time, it was our policy to do so. Additionally, *70 the lead opinion's conclusions on constitutional grounds-regarding the judiciary's core powers-should be read as limited to the unremarkable reiteration of our responsibility to interpret and apply the law in cases and controversies before the courts.
II. INTERPRETING AND APPLYING WIS. STAT. § 77.52(2)(a)11.
¶143 I also write because I do not agree with the court's redefining terms that the legislature has statutorily defined. Specifically, the legislature defines "printing" and "imprinting." See Wis. Stat. § 77.51(11). Without acknowledging or attempting to incorporate these two statutorily-defined terms into its analysis, the court first turns to ordinary meaning (i.e., dictionaries) in interpreting and applying Wis. Stat. § 77.52(2)(a)11. While it is not improper for the court to turn to the dictionary for the undefined terms, I take issue with the court turning to the dictionary to redefine "printing" and "imprinting"-the two statutory terms. In so doing, the court also overstates the necessity of avoiding surplusage because the legislature here has defined at least some terms-printing and imprinting-to entirely overlap. In the end, this is *597 a taxation statute; it could very well be that the legislature wanted to leave little room for exclusion from taxation.
A. Specially-Defined Terms: Printing and Imprinting
¶144 The legislature provided definitions for two of the five terms at issue-printing and imprinting-and those two statutorily-defined terms completely overlap.[12] However, in an effort to ensure that each term "retain[s] an independent meaning," that is, "has at least one attribute distinct from the others," majority op., ¶ 101, the court makes no mention of the legislatively-provided definitions, but instead selects dictionary definitions that support its analysis. Majority op., ¶ 100. I find that to be contrary to our prescribed method of statutory interpretation.
¶145 To start, Wis. Stat. § 990.01(1) provides: "All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning." Similarly, State ex rel. Kalal v. Circuit Court for Dane County states: "Statutory language is *598 given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." 2004 WI 58, ¶ 45, 271 Wis.2d 633, 681 N.W.2d 110 ; see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69-77 (2012) ("Ordinary-Meaning Canon") ("Words are to be understood in their ordinary, everyday meanings-unless the context indicates that they bear a technical sense.").
¶146 Under the statute, "printing" and "imprinting" are specially defined: " 'Printing' and 'imprinting' include lithography, photo-lithography, rotogravure, gravure, letterpress, silk screen printing, multilithing, multigraphing, mimeographing, photostating, steel die engraving and similar *71 processes." Wis. Stat. 77.51(11) (2007-08).[13] Nevertheless, the court states as follows:
"[P]rinting" means "[t]o make or produce (text, a book, a picture, etc.) by a mechanical process involving the transfer of characters or designs on to paper, vellum, etc." Printing, The Oxford English Dictionary (2d ed. 1989) (definition II.8.a.).... "[I]mprinting" means "[t]o mark by pressure; to impress, stamp," "[t]o impress (letters or characters) on paper or the like by means of type," and "[t]o make an impression or impressed figure upon; to stamp or impress (something) with a figure, etc." Imprinting, The Oxford English Dictionary (2d ed. 1989) (definitions 1.a., 2., and 4.a., respectively).
Majority op., ¶ 100. This reliance on ordinary meaning (i.e., dictionaries) is contrary to statute and to the *599 common law because "printing" and "imprinting" are specially defined. See Wis. Stat. § 990.01(1) ; Kalal, 271 Wis.2d 633, ¶ 45, 681 N.W.2d 110. But, despite the clarity of the law in this area, the court gives no consideration to the synonymous, statutory definition and instead favors dual dictionary definitions. Doing so does aid its analysis in at least two ways,[14] but the legislatively defined terms cannot be ignored for the sake of convenience. Moreover, further analysis reveals that relying on the synonymous statutory definitions is not fatal to the court's result because such overlap is likely what the legislature intended.
B. Surplusage
¶147 The court understandably struggles with distinguishing "processing," "producing," and "fabricating." As an initial matter, these terms are not statutorily defined. And, although normally this would not present great difficulty-as resort to dictionaries for ordinary meaning is appropriate where terms are not statutorily defined-here, even the dictionary definitions have significant overlap. (How would one produce or fabricate something without putting it through a process?) But instead of acknowledging this overlap, *600 the court reaches to distinguish these terms in order to avoid surplusage. Such artifice is unnecessary in my view. First, surplusage need not be avoided at all costs. Second, not all overlap is surplusage, particularly where, as here, the plain meaning of the terms and the synonymous nature of coordinate, legislatively-defined terms invites overlapping interpretations. Third, regardless of the amount of overlap, Stuyvesant Dredging's actions fall within the definition of "processing." Again, in a taxation statute, where generally the legislature is trying to include, not exclude, those who will be subject to taxation, such a broad sweep is unsurprising.
¶148 While avoiding surplusage is generally favored, surplusage need not be avoided at all costs. Kalal states: "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."
*72 271 Wis.2d 633, ¶ 46, 681 N.W.2d 110 (emphasis added); see also Scalia & Garner, supra ¶ 145 at 174-79 ("Surplusage Canon") ("If possible, every word and every provision is to be given effect ....") (emphasis added). Thus, it is not true that "we must understand 'processing' to bear a meaning that does not displace all of the other descriptors ...." Majority op., ¶ 101 (emphasis added).[15]
¶149 Additionally, in my view, it may not be possible to avoid complete overlap among "processing," "producing," and "fabricating," because the ordinary *601 meaning of "processing" is so broad.[16] But the fact that an abstract definition of "processing" could encompass the abstract definitions of the other statutory terms does not necessarily displace them, as their use might be more appropriate in certain contexts. For example, on the one hand, we think of films as being "produced" and some stories as being "fabricated," even though no one would dispute that making a film or making up a story is a process. On the other hand, we think of some foods-American cheese slices, for example-as being "processed."
¶150 In other words, surplusage is not to be assumed merely because the legislature has used a broad term. See Pawlowski v. Am. Family Mut. Ins. Co., 2009 WI 105, ¶ 22, 322 Wis.2d 21, 777 N.W.2d 67 ("The use of different words joined by the disjunctive connector 'or' normally broadens the coverage of the statute to reach distinct, although potentially overlapping sets.") This is perhaps particularly true where, as here, the legislature has invited such overlapping interpretations by specifically defining two of the terms as synonyms. See Georgina G. v. Terry M., 184 Wis.2d 492, 540, 516 N.W.2d 678 (1994) (Bablitch, J., dissenting) ("The legislature at times, as here, deliberately paints with a very broad ... brush."); see also Scalia & Garner, supra ¶ 145 at 174 ("[I]t is no more the court's function to revise by subtraction than by addition.").
*602 ¶151 Regardless of the amount of overlap, under a plain meaning analysis Stuyvesant Dredging's work constituted "processing," as that term is used in Wis. Stat. § 77.52(2)(a)11. We begin with the language of the statute. Kalal, 271 Wis.2d 633, ¶ 45, 681 N.W.2d 110. The statute states in relevant part as follows:
(2) For the privilege of selling, performing or furnishing the services described under par. (a) at retail in this state to consumers or users, a tax is imposed upon all persons selling, performing or furnishing the services at the rate of 5% of the gross receipts from the sale, performance or furnishing of the services.
(a) The tax imposed herein applies to the following types of services: ...
11. The producing, fabricating, processing, printing *73 or imprinting of tangible personal property for a consideration for consumers who furnish directly or indirectly the materials used in the producing, fabricating, processing, printing or imprinting. This subdivision does not apply to the printing or imprinting of tangible personal property that results in printed material, catalogs, or envelopes that are exempt under s. 77.54 (25) or (25m).
§ 77.52(2)(a)11.
¶152 "Processing" is not defined in the statute, thus, resort to dictionary definitions is not inappropriate. See Kalal, 271 Wis.2d 633, ¶ 45, 681 N.W.2d 110 ("Statutory language is given its common, ordinary, and accepted meaning ...."). "Processing" is defined in dictionaries as follows: (1) "to subject to a special process or treatment"; "to subject to or handle through an established usually routine set of procedures";[17]
*603 (2) "to put through the steps of a prescribed procedure"; "to prepare, treat, or convert by subjecting to a special process";[18] (3) "[t]o subject to or treat by a special process; to operate on mechanically or chemically."[19]
¶153 In my view, Stuyvesant Dredging's separation of dredged materials plainly falls under any of these definitions of "processing." "If the meaning of the statute is plain, we ordinarily stop the inquiry." Kalal, 271 Wis.2d 633, ¶ 45, 681 N.W.2d 110. And I would reiterate that the fact that the definition of "processing" is broad does not mean that it is ambiguous, nor does it render the statute meaningless. See Kernz v. J. L. French Corp., 2003 WI App 140, ¶ 16, 266 Wis.2d 124, 667 N.W.2d 751 ("[A] phrase is not ambiguous simply because it is general or broad."); see also Zarnstorff v. Neenah Creek Custom Trucking, 2010 WI App 147, ¶ 21, 330 Wis.2d 174, 792 N.W.2d 594 (quoting Lawver v. Boling, 71 Wis.2d 408, 422, 238 N.W.2d 514 (1976) ) ("[A]n otherwise unambiguous provision is not rendered ambiguous simply because it is difficult to apply to the facts of a particular case.").
¶154 In sum, the plain language of the statute compels the conclusion that, in the Venn diagram of definitions, "processing" is the paper on which overlapping circles for "producing" and "fabricating" are drawn. This, however, does not mean that Stuyvesant Dredging's work cannot be understood as falling within the plain meaning of "processing."
*604 III. CONCLUSION
¶155 I agree with the result the court reaches. I concur and write separately because the analysis that the lead opinion employs to reach its conclusions is concerning. First, in my view, it is both unnecessary and inadvisable to rely on constitutional grounds for ending our practice of deferring to administrative agencies' conclusions of law. Deference to administrative agencies was a court-created doctrine and, thus, is one that can be court eliminated. We need not reach for the constitution to so act.
¶156 Second, in interpreting the statute here, the court relies on ordinary meaning to define all five terms, even though two of them have statutory definitions. Additionally, the court relies on the surplusage canon as grounds for selectively defining necessarily broad terms, even though the complete overlap between the two statutorily-defined terms indicates that the legislature *74 may well have intended for overlap among the undefined terms as well.
¶157 Nevertheless, I agree that " 'processing' encompasses Stuyvesant Dredging's separation of river sediment into its component parts." Majority op., ¶ 104. Accordingly, I respectfully concur.
¶158 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins Part I of this concurrence.

By implication, which I now make express, my analysis and conclusion apply just as strongly to due weight deference.

Accordingly, I join the following parts of the majority opinion: ¶¶ 1-3, I, II (intro), II.A. (intro), II.A.1., II.A.2., II.A.6., II.B., III, and the mandate. To the extent the first sentence of ¶ 84 implies a holding on constitutional grounds, I do not join it.

The lead opinion cites Wis. Stat. § 806.07 in support of this assertion, concluding that no paragraph of that statute would allow a party to reopen a final judgment based on this decision. Lead op., ¶¶ 89-91. To the contrary, the lead opinion's conclusion that deference is unconstitutional could support an argument for relief from a final judgment under § 806.07(1)(a), on the basis of "mistake"; under para. (1)(d), on the basis that "[t]he judgment is void"; under para. (1)(f), on the basis that "[a] prior judgment upon which the judgment is based has been reversed"; or under para. (1)(h), on the basis that "[a]ny other reasons justifying relief from the operation of the judgment." § 806.07(1)(a), (d), (f), (h).
The lead opinion attempts to bolster its interpretation of § 806.07 by quoting Schauer v. DeNeveu Homeowners Ass'n, Inc., 194 Wis.2d 62, 75, 533 N.W.2d 470 (1995), for the proposition that " '[§ 806.07 ] does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled in an unrelated proceeding.' " Lead op., ¶ 90 (alteration in original). To the contrary, the court in Schauer concluded that "sec. 806.07(1)(f) does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled in an unrelated proceeding." Schauer, 194 Wis.2d at 66, 533 N.W.2d 470. Thus, the lead opinion's implication-by-alteration that this case interpreted § 806.07 broadly is error. Moreover, Schauer was a case where the parties had reached a settlement regarding the scope of an easement wherein they allegedly relied on later-overruled case law in reaching the settlement. Thus, while arguably Schauer decided the application of § 806.07(1)(f) under those circumstances, it does not address other subsections of the statute, nor does it address every possible application of § 806.07(1)(f).
Additionally, the lead opinion's assertion that "overruling a case does not expose to collateral attack any of the intervening decisions that were based on the overruled case" is subject to question. Lead op., ¶ 90. To the contrary, overruling one of our prior decisions can quite obviously have significant impact on other cases.

See lead op., ¶ 42 (citing Wis. Const. art. VII, § 2 ).

See lead op., ¶ 44 (citing Gabler v. Crime Victims Rights Bd., 2017 WI 67, ¶ 11, 376 Wis.2d 147, 897 N.W.2d 384 ).

See lead op., ¶ 46 (citing State v. Horn, 226 Wis.2d 637, 643, 594 N.W.2d 772 (1999) ).

Lead op., ¶ 54 (quoting Gabler, 376 Wis.2d 147, ¶ 37, 897 N.W.2d 384 ).

Lead op., ¶ 54.

Id.

For example, the lead opinion states as follows:
The executive must certainly interpret and apply the law; it would be impossible to perform his duties if he did not. After all, he must determine for himself what the law requires (interpretation) so that he may carry it into effect (application). Our constitution not only does not forbid this, it requires it. Wis. Const. art. V, § 1 ("The executive power shall be vested in a governor ...."); Perez v. Mortg. Bankers Ass'n, [--- U.S. ----], 135 S.Ct. 1199, 1217, [191 L.Ed.2d 186] (2015) (Thomas, J., concurring) ("It is undoubtedly true that the other branches of Government have the authority and obligation to interpret the law ....").
Lead op., ¶ 53.

See, e.g., lead op., ¶ 54 (citing Operton v. LIRC, 2017 WI 46, ¶ 73, 375 Wis.2d 1, 894 N.W.2d 426 (R. Grassl Bradley, J., concurring) ) (" '[T]he court's duty to say what the law is' constitutes a 'core judicial function.' "); id., ¶ 70 (citing Wis. Stat. § 227.57(5) ) ("[T]he statute says the court is to decide whether the agency has 'erroneously interpreted a provision of law.' And the court is to determine the 'correct interpretation of the provision of law.' This formulation recognizes the proper residence of our core judicial powers."); id., ¶¶ 73-74 (implying that an agency's interpretation and application of the law is an exercise of "our power").

The five terms at issue are "processing," "producing," "fabricating," "printing," and "imprinting." "Printing" and "imprinting" are defined by statute, see Wis. Stat. § 77.51(11) ; "processing," "producing," and "fabricating" are not. The court argues that § 77.51(11), despite being a subsection of the "Definitions" section of the statute, does not provide a definition because it provides no "useful information." Majority op., ¶ 102 n.51. As noted below, see infra ¶ 145, note 14, the fact that the court finds the statutory definition unhelpful in conducting its preferred analysis is not a reason to ignore it. Moreover, to the contrary, § 77.51(11) does provide useful information, namely, a measure of the legislature's comfort with overlap. See infra ¶ 149.

"Printing" and "imprinting" are also specially defined in this manner in the 2005-06 version of the statute. See majority op., ¶ 2 n.2.

First, the statutory definition is illustrative rather than descriptive. Thus, reliance on the statutory definition would impair the court's analysis because it would not provide a useful comparison to the court's descriptive dictionary definitions of "producing" and "fabricating." See majority op., ¶ 100. Second, the statute defines "printing" and "imprinting" as synonyms, that is, their statutory definition overlaps in its entirety. Thus, reliance on the statutory definition would impair the court's analysis because it would contravene the court's conclusion that each term "retain[s] an independent meaning" because "it has at least one attribute distinct from the others." Majority op., ¶ 101.

In this regard, I do not disagree that "[w]e must make our best effort at determining the specific meaning," majority op., ¶ 103 n.51 (emphasis added); rather, in my view, no effort-other than one to rewrite the statute-can overcome the plain and broad meaning of the terms used by the legislature here. See infra ¶¶ 148, 150-153.

In this regard, I note that the court's conclusion that "processing" is "a task that can be completed without transforming the property into a new product, or adding anything to it that was not already there" does not avoid displacing "producing" and "fabricating." Majority op., ¶ 103. Just because "processing" encompasses tasks that are not "producing" or "fabricating" does not mean that "producing" and "fabricating" are not subordinate forms of "processing."

Process, merriam-webster.com, (search "processing") (verb) (last visited May 11, 2018).

Process, ahdictionary.com, (search "processing") (tr. v.) (last visited May 11, 2018).

Majority op., ¶ 103 (quoting Processing, The Oxford English Dictionary (2d ed. 1989) (definition 3.a.) ).